UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-1257
Summary Calendar
_____


FREDDY GARCIA,

                                    Plaintiff-Appellant,

                    versus

ELF ATOCHEM NORTH AMERICA,
d/b/a Ozark Mahoning & Co.,
ET AL.,

                                    Defendants-Appellees.

_____

Appeal from the United States District Court for the
Northern District of Texas
_____

(  July 29, 1994  )

Before GARWOOD, SMITH and DEMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

    Plaintiff-appellant Freddy Garcia (Garcia) filed this suit against defendants-appellees Elf Atochem North America, Inc. (Elf), Jerry Mowell (Mowell), and Rayford Locke (Locke) (collectively, the defendants), alleging that he had been sexually harassed during his employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (Title VII).  The district court granted summary judgment in favor of the defendants and dismissed Garcia's case.  Garcia now appeals.  We affirm.

**Facts and Proceedings Below**

Garcia began working at the Seagraves, Texas, plant of the Ozark-Mahoning Company (Seagraves Ozark) in December 1984. Seagraves Ozark is a Delaware corporation, and is a wholly-owned subsidiary of Delaware Chemicals Corporation, which in turn is a subsidiary of Elf. Mowell was a plant manager at Seagraves Ozark during Garcia's employment there. Locke was a plant foreman at Seagraves Ozark during this same period, but left the plant in February 1992 and did not return. Although Locke was a supervisor at Seagraves Ozark, he was not Garcia's supervisor.

Garcia's employment at Seagraves Ozark was governed by a collective bargaining agreement between Seagraves Ozark and Local 826 of the International Union of Operating Engineers (the Union). The agreement contains provisions prohibiting sex discrimination and establishing a grievance and arbitration procedure.

On May 3, 1991, Garcia reported to his Union steward, Vick Cornett, who then reported to Mowell, that Locke had "sexually harassed" Garcia. Garcia alleged that on several occasions between March and May of 1991, Locke had approached Garcia from behind and "reach[ed] around and grab[bed] [Garcia's] crotch area and ma[de] sexual motions from behind [Garcia]." In response to Garcia's complaint, Seagraves Ozark reprimanded Locke and informed him that any further incidents would result in his termination. After he was reprimanded, no further incidents occurred between Locke and Garcia and Garcia continued to work at Seagraves Ozark.

Prior to Garcia's complaint, Seagraves Ozark had received two other arguably similar complaints about Locke's conduct: one in

2

1986 and one in 1988. The conduct complained of was viewed as "horseplay" and was not alleged to be sexually motivated. After these complaints, Locke was counselled about his behavior and informed that his conduct was not appropriate for a supervisor. Following this counselling, no further complaints were reported to Seagraves Ozark until Garcia's May 3, 1991, complaint.

On June 4, 1991, Garcia filed a charge of employment discrimination with the Equal Employment Opportunities Commission (EEOC). Thereafter, on June 30, 1992, Garcia filed the instant action. In his complaint, Garcia alleged that he had been sexually harassed in violation of Title VII, and named as defendants Elf, Mowell, and Locke. Garcia's complaint also alleged several state law causes of action. He sought compensatory and punitive damages, as well as costs, fees, and any "[i]njunctive relief the Court may deem just."

On February 1, 1993, Mowell and Elf filed a motion for summary judgment as to all claims. Locke filed a separate motion for summary judgment on that same date. On March 1, 1993, the district court granted the defendants' motions for summary judgment as to the Title VII claim. The court based its decision on its conclusions that (1) neither Garcia nor Locke were employees of Elf, but were instead employees of Seagraves Ozark; (2) Mowell took immediate corrective steps in response to Garcia's May 3, 1991, complaint; (3) Locke did not bother or attempt to harass Garcia after the warning and reprimand by Mowell in May of 1991; (4) Seagraves Ozark had a policy prohibiting sexual harassment posted on its bulletin board for several years prior to May 1991; and (5)

3

because Garcia failed to name Locke as a respondent in his EEOC complaint, he had not exhausted his administrative remedies against Locke in the alleged sexual harassment claim. In addition to granting summary judgment on the Title VII claim, the district court dismissed the state law claims without prejudice.

The district court subsequently denied Garcia's motion for reconsideration which was directed to the Title VII claim only. On appeal, Garcia challenges only the summary judgment on the Title VII claim.

## Discussion

This case comes to us from a grant of summary judgment against the party with the burden of proof at trial. In reviewing a summary judgment, we review the record *de novo*, *see Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992), and we apply the same standard as the district court. *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989). We must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). If the record taken as a whole could not lead a rational jury to find for the nonmoving party, there is no genuine issue for trial. *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (*en banc*). "Such a finding may be supported by the absence of evidence to establish an essential element of the nonmoving party's case." *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citations omitted). Additionally, "[w]e may affirm a summary judgment on grounds other than those relied upon by the district court when we

4

find in the record an adequate and independent basis for that result." *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1255 (5th Cir. 1990) (citations omitted). Once a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that a summary judgment should not be granted. *Celotex Corporation v. Catrett*, 106 S.Ct. 2548, 2552-53 (1986). A party opposing such a summary judgment motion may not rest upon mere allegations of his pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2514 (1986).

Title VII provides that where a court finds that an employer has engaged in unlawful employment practices, it may order action "which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay, . . . or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g). Compensatory and punitive damages are not available under Title VII for conduct occurring before the effective date of the Civil Rights Act of 1991. *Landgraf v. USI Film Prods.*, 968 F.2d 427, 431 (5th Cir. 1992), *aff'd*, 114 S.Ct. 1483 (1994).

Since the conduct complained of by Garcia took place in May of 1991, and the damages provisions of the Civil Rights Act of 1991 did not become effective until November 21, 1991, Garcia could only seek equitable relief. Yet, because Garcia continued to work for Seagraves Ozark in the same position with at least the same compensation, and because Locke no longer works for Seagraves

5

Ozark, neither an award of back pay nor any other form of injunctive relief would be appropriate. Thus, any harm Garcia may have suffered as a result of Locke's harassment is not redressible under Title VII. For this reason, Garcia's claim fails and we will uphold the summary judgment.

Garcia's Title VII claim was also properly dismissed because he did not establish a *prima facie* case against any of the defendants.

I. Defendants

A. Elf Atochem

Title VII prohibits an "Employer" from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The district court concluded that summary judgment was appropriate as to Elf in part because Title VII liability attaches only to the plaintiff's employer, and the court found that Elf was not Garcia's "Employer" for the purposes of the statute.

In his response to Elf's motion for summary judgment, Garcia argued that the district court should find that Elf was his employer based solely on Mowell's deposition testimony that (1) Garcia was employed by Seagraves Ozark, and (2) Seagraves Ozark is a wholly owned subsidiary of Elf. These two facts standing alone, however, are not enough to establish that Elf is Garcia's employer.

Apparently, Garcia's argument is that Elf and Seagraves Ozark are a "single, integrated enterprise," making Seagraves Ozark's status as Garcia's employer attributable to Elf. Although "[t]he

6

term 'employer' as used in Title VII of the Civil Rights Act was meant to be liberally construed,"[1] a parent and subsidiary cannot be found to "represent a single, integrated enterprise" in the absence of evidence of "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Trevino v. Celanese Corp.*, 701 F.2d 397, 403-04 (5th Cir. 1983); *see also Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir. 1983) (parent and subsidiary which were highly integrated with respect to ownership and operations constituted single "employer"). *But cf. Nationwide Mut. Ins. Co. v. Darden*, 112 S.Ct. 1344, 1348-49 (1992) (noting that when a statute does not helpfully define a term, courts should not apply a meaning that is broader than its common-law definition, in adopting common-law test for deciding who qualifies as an "employee" under ERISA). In the case *sub judice*, Garcia failed to identify any such evidence in his opposition to Elf's motion for

---

[1] The term "employer" is defined in the Act as follows:

"(b) The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers." 42 U.S.C.A. § 2000e(b) (1981).

summary judgment.  Hence, the district court was correct in finding that Elf was not Garcia's employer for the purposes of Title VII, and was thus correct in granting summary judgment in favor of Elf on that basis.

B.    Locke

As noted above, Title VII liability attaches only to a plaintiff's "employer."  Section 2000e(b) defines an employer as "a person engaged in an industry affecting commerce . . . *and any agent of such a person*."  42 U.S.C. § 2000e(b) (emphasis added).  In this Circuit, we have accorded the phrase "any agent" a liberal construction.  *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990) (citing *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied*, 92 S.Ct. 2058 (1972), and *Quijano v. University Federal Credit Union*, 617 F.2d 129, 131 (5th Cir. 1980)).  "Under this liberal construction, *immediate supervisors* are Employers when delegated the employer's traditional rights, such as hiring and firing."  *Id*. (emphasis added) (citation omitted); *see also Hamilton v. Rodgers*, 791 F.2d 439, 442-43 (5th Cir. 1986) (construing the term employer to include immediate supervisors only when they "participated in the decision-making process that forms the basis of the discrimination").  There can be no liability under Title VII, however, "for the actions of mere co-workers."  *Harvey*, 913 F.2d at 228.

In the case *sub judice*, Garcia attempts to hold Locke liable under Title VII, even though it is undisputed that Locke was not

8

Garcia's supervisor.[2]  To accept this argument would require this Court to further liberalize our construction of the term employer to include all supervisory personnel, not just those with the ability to hire or fire.  We decline to do so.  The purpose of extending "employer" status to immediate supervisors is to hold liable those with power over the plaintiff which exceeds that of mere co-workers.  Here, Locke was not responsible for the terms and conditions of Garcia's employment, for his work assignment within the company, or for hiring or firing decisions.  Because we see no basis on which to extend Title VII liability to someone in Locke's position, summary judgment was appropriate.

C.  Mowell

The district court granted summary judgment in favor of Mowell in part because the court found that (1) Mowell took prompt action against Locke in response to Garcia's May 3, 1991, complaint, and (2) Mowell's actions were effective in that Locke did not bother or attempt to harass Garcia after the warning and reprimand in May 1991.

Assuming, *arguendo*, that Mowell as Garcia's supervisor could be considered an employer for the purposes of Title VII, and that Locke's conduct toward Garcia constituted sexual harassment under Title VII, Mowell nevertheless can be held liable for sexual

---

[2]    Although Garcia's complaint does not make clear whether he is suing either Locke or Mowell in their individual capacity or rather in their capacity as agents of Seagraves Ozark, we construe Garcia's suit to be against Locke and Mowell in their official capacity since Title VII liability does not attach to individuals acting in their individual capacity.  *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir. 1994).

9

harassment only if he knew or should have known of the harassment and failed to take prompt remedial action which was "reasonably calculated" to end the harassment. *See Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986), *cert. denied*, 107 S.Ct. 952 (1987). "What is appropriate remedial action will necessarily depend on the particular facts of the caseSQthe severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Waltman*, 875 F.2d at 479 (citing *DeGrace v. Rumsfeld*, 614 F.2d 796, 805 n.5 (1st Cir. 1980).

Immediately after Garcia reported Locke's behavior to Mowell, Mowell reprimanded Locke and warned him that any further harassment of Garcia would result in termination. Garcia contends that this action was not "reasonably calculated to end the harassment." Garcia's argument is unpersuasive because not only were Mowell's actions prompt and reasonably calculated to end the harassment, but the harassment actually ended. Hence, Garcia failed to satisfy this prong of the *Flagship* test, and thus the district court was correct in granting summary judgment on Garcia's Title VII claim against Mowell.

II.  Sexual Harassment

Finally, we held in *Giddens v. Shell Oil Co.*, No. 92-8533 (5th Cir. Dec. 6, 1993) (unpublished), that "[h]arassment by a male supervisor against a male subordinate does not state a claim under Title VII even though the harassment has sexual overtones. Title VII addresses gender discrimination." *Accord Goluszek v. Smith*, 697 F.Supp. 1452, 1456 (N.D. Ill. 1988). Thus, what Locke did to Garcia could not in any event constitute sexual harassment within

the purview of Title VII, and hence summary judgment in favor of all defendants was proper on this basis also.

### Conclusion

For the reasons stated above, Garcia's arguments on appeal are rejected and the district court's judgment is accordingly

AFFIRMED.