Carla LARRY, Plaintiff,

v.

**NORTH MISSISSIPPI MEDICAL CENTER and Mary Grice, Defendants.**

Master File No. 1:95CV336–D–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

Aug. 15, 1996.

Luther C. Fisher, IV, Ellis, Ellis & Fisher, Tupelo, Mississippi, for Plaintiff.

Robert Q. Whitwell, Farese, Farese & Farese, Ashland, Mississippi, for Defendant Mary Grice.

N. Victoria Holladay and Rebecca G. Moore, Kullman, Inman, Bee, Downing & Banta, New Orleans, Louisiana, for North Mississippi Medical Center.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause comes before the court upon the separate motions of the defendants for summary judgment. Plaintiff Carla Larry has sued the defendants, North Mississippi Medical Center ("NMMC") and Mary Grice, alleging that they are liable to her under federal law for sexual harassment, retaliation and constructive discharge in violation of Title VII of the Civil Rights Act of 1991 (42 U.S.C. §§ 2000e *et seq.*). In addition, she asserts state law claims for intentional infliction of emotional distress, interference with an employment relationship, violations of the employee handbook and battery. The defendants both touched on the same issues in their respective summary judgment motions, contending that the plaintiff's claims must fail as a matter of law. The plaintiff filed a single response to both motions and the issues are ripe for determination.

### FACTUAL BACKGROUND [1]

NMMC employed Carla Larry for approximately three (3) years until March 13, 1995. Her last position with NMMC was as a Unit Coordinator/Ward Secretary. Approximately two (2) years prior to that time, defendant Mary Grice began periodically touching plaintiff's breasts while at work. Subsequently, NMMC promoted Grice to head nurse over the Behavioral Health Center ("BHC") where she was the direct supervisor of plaintiff's direct supervisor. As head nurse, Grice continued touching the plaintiff

---

**1.** In a motion for summary judgment, the facts must be construed in the light most favorable to the non-moving party. *Matagorda County v. Russell Law*, 19 F.3d 215, 217 (5th Cir.1994). The court's recitation of the facts in this case reflects this rule.

in an improper manner, the last incident occurring close to a month before the end of plaintiff's employment with NMMC. Larry alleges that Grice would also stare at Larry's body on occasion and comment inappropriately about parts of the plaintiff's anatomy.

Larry alleges that this behavior was particularly shocking to her as she had been sexually abused as a child, a fact of which she made Grice aware. The plaintiff initially reported Grice's conduct to someone in administration of the BHC, but received no satisfactory results. Finally, after the last incident, Larry informed her supervisor and another employee of her encounters with Grice and subsequently also notified Roger Brown, then-Vice President of Human Resources and Donnis Harris, Vice-President of Nursing for NMMC.

Grice denied the plaintiff's allegations. NMMC reprimanded Grice, but allowed Grice to remain in her position as head nurse at the BHC. Larry alleges that she suffered extreme emotional anguish from the continuing contact with Grice and that her doctor counseled her to leave her employment for her mental health. Nevertheless, Larry admits that Grice did not act inappropriately towards her after NMMC's reprimand. Larry tried to transfer within the hospital without success and tendered her resignation on February 27, 1995, to be effective two weeks later.

### DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interroga-

tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir.1996). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Federal Sav. & Loan Ins. v. Kralj*, 968 F.2d 500, 503 (5th Cir.1992). The facts are reviewed drawing all reasonable inferences in favor of the party opposing the motion. *Banc One Capital Partners Corp. v. Kniepper*, 67 F.3d 1187, 1198 (5th Cir.1995); *Matagorda County v. Russell Law*, 19 F.3d 215, 217 (5th Cir.1994).[2]

### II. TITLE VII CLAIMS

### A. SEXUAL HARASSMENT CLAIMS

■ In their motions, both defendants submit that same-gender sexual harassment

---

**2.** On April 22, 1996, Magistrate Judge Jerry A. Davis stayed all discovery proceedings in this cause pending this court's resolution of NMMC's summary judgment motion. All parties consented to the motion to stay the proceedings. However, the plaintiff submits that she was under the impression that the summary judgment motion would only address the legal issue of the validity in the Fifth Circuit of same-gender sexual harassment claims. Thus, she requests that summary judgment be denied as premature as to the remainder of the motion. Normally parties are entitled to adequate discovery before being confronted with a motion for a judgment as a matter of law. *Gunaca v. State of Texas*, 65 F.3d 467, 469 (5th Cir.1995) (noting need for adequate time for discovery). However, a "plaintiff's enti-

tlement to discovery prior to a ruling on a summary judgment motion may be cut off when, within the trial court's discretion, the record indicates that further discovery will not likely produce facts necessary to defeat the motion." *Cormier v. Pennzoil*, 969 F.2d 1559, 1561 (5th Cir.1992). The court is of the opinion that further discovery in this case would not save the plaintiff's claims. Furthermore, no genuine issues of material fact exist so as to preclude summary judgment because "[f]or purposes of this motion only, Defendant NMMC does not contest the facts as alleged in Plaintiff's Complaint." Defendant's Mem. in Support of Mot. for Summary Judgment at 6. Defendant Grice similarly did not contest any factual issues solely for purposes of her summary judgment motion.

is not actionable under Title VII according to the Fifth Circuit opinions of *Garcia v. Elf Atochem North America,* 28 F.3d 446 (5th Cir.1994), and *Giddens v. Shell Oil Co.,* 12 F.3d 208 (5th Cir.1993) (unpublished), *cert. denied,* —— U.S. ——, 115 S.Ct. 311, 130 L.Ed.2d 274 (1994). The plaintiff takes the position that the Fifth Circuit has not definitively closed the door on same-gender claims. In *Garcia,* the court noted that

> we held in [*Giddens* ] that "[h]arassment by a male supervisor against a male subordinate does not state a claim under Title VII even though the harassment has sexual overtones. Title VII addresses gender discrimination."

28 F.3d at 451–52 (citing *Goluszek v. Smith,* 697 F.Supp. 1452, 1456 (N.D.Ill.1988)). The plaintiff reads both opinions as leaving the question open based upon the factual proof, or lack of same, in that neither plaintiff in *Garcia* nor *Giddens* presented evidence (or at least the opinion did not discuss) that the sexual harassment occurred *because of the plaintiff's gender.* Thus, Larry submits that a person could prevail in the Fifth Circuit on a Title VII claim under a same-gender theory if he or she could prove the discrimination occurred because of that person's gender.

The plaintiff misreads the controlling Fifth Circuit law. In *Garcia,* the appellate court did not confine its opinion to such a narrow interpretation as the plaintiff submits. While *Giddens* could be read, as the plaintiff asserts, to allow a same-gender claim with the proper factual support,[3] the Fifth Circuit later expanded that holding in *Garcia* to bar all same-sex sexual harassment claims. 28 F.3d at 451–52. The court opined in the later case that *gender* discrimination is the type of sex discrimination addressed by Title VII,[4] and that interpretation necessarily precludes all claims of sexually motivated discrimination between parties of the same gender. *Id.*

The Fifth Circuit recently affirmed this interpretation of *Garcia* in *Oncale v. Sundowner Offshore Servs., Inc.,* 83 F.3d 118, 119–20 (5th Cir.1996), where the court noted that the *Garcia* opinion "seems to indicate clearly that same-sex harassment claims are not viable under Title VII." *Oncale,* 83 F.3d at 120 (noting previous panel decision which recognized *Garcia* as binding precedent on the same-gender issue); *see Blake v. City of Laredo,* 58 F.3d 637 (5th Cir.1995) (per curiam) (unpublished). While the *Oncale* Court appeared uncomfortable with its holding, it reluctantly noted that "[i]n this Circuit, one panel may not overrule the decision, right or wrong, of a prior panel in the absence of an intervening contrary or superseding decision by the Court *en banc* or the Supreme Court." *Id.* at 119.

Thus, this court is bound by Fifth Circuit precedent to find that Larry's same-gender sexual harassment claims against the defendants in this suit do not state a viable cause of action under Title VII. The undersigned notes, as did the *Oncale* Court, that while no circuit split yet exists, several circuit courts have implied their amenability to hear such claims. *See Oncale,* 83 F.3d at 120 n. 3; *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 755 (4th Cir.1996) (noting disagreement among panel over actionability of same-gender claims). Furthermore, several district courts have already directly or impliedly held contra to *Garcia*'s interpretation of Title VII. *See, e.g., Williams v. District of Columbia,* 916 F.Supp. 1, 7–10 (D.D.C.1996) (noting that "[t]here is no legislative history that suggests that victims of sexual harassment must be sexually harassed by harassers of the opposite sex before they may invoke the protections of Title VII."); *Easton v. Crossland Mortgage Corp.,* 905 F.Supp. 1368, 1378–79 (C.D.Cal.1995); *Ecklund v. Fuisz Tech., Ltd.,* 905 F.Supp. 335, 337–39 (E.D.Va.

---

**3.** The language upon which the plaintiff relies in *Giddens* states:

> Giddens did not allege how his employer treated him differently because he was a male and he produced no evidence at trial tending to prove such facts. The District Court, therefore, correctly dismissed Giddens' Title VII action.

*Giddens,* No. 92–8533 (5th Cir. Dec. 6, 1993), slip op. at 2.

**4.** Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to ... terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1).

1995); *Blozis v. Mike Raisor Ford,* 896 F.Supp. 805, 806 (N.D.Ind.1995); *Raney v. District of Columbia,* 892 F.Supp. 283, 286–88 (D.D.C.1995); *Griffith v. Keystone Steel & Wire,* 887 F.Supp. 1133, 1135 (M.D.Tenn. 1995); *Prescott v. Independent Life & Accident Ins. Co.,* 878 F.Supp. 1545, 1549–51 (M.D.Ala.1995); *McCoy v. Johnson Controls Servs., Inc.,* 878 F.Supp. 229, 231–32 (S.D.Ga. 1995). The court does not find fault with the plaintiff for making a good faith argument that the Fifth Circuit's interpretation of the invalidity of same-gender claims under Title VII is in error. However, this court is bound by such interpretation and must dismiss the plaintiff's sexual harassment claims.

## B. RETALIATION CLAIMS

■ Larry also claims that the defendants retaliated against her in violation of Title VII. To prove a prima facie claim of retaliation, the plaintiff must demonstrate that (1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection existed between the participation in the protected activity and the adverse employment action. *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir.1996); *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir.1995). The defendants assert that the plaintiff cannot meet the first prong of engagement in a protected activity because the behavior about which she complained—same-gender sexual harassment—is not actionable under Title VII. The defendants misinterpret the elements of a prima facie case of retaliation. The statute makes it unlawful for an employer to discriminate against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, as-

sisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The Fifth Circuit has held the opposition clause only to require that an employee demonstrate that she had "at least a 'reasonable belief' that the practices she opposed were unlawful." *Long,* 88 F.3d at 304. With the differences of opinion noted *supra* among federal courts over whether same-gender claims are actionable under Title VII, the court can confidently hold that at least an issue of fact exists as to whether Larry reasonably believed the behavior about which she complained was unlawful.[5]

■ Upon demonstrating that the activity in which she engaged is protected under Title VII, the plaintiff must next establish that she suffered an adverse employment action. The defendants submit that the warning the plaintiff received on the day she resigned is insufficient to constitute an adverse employment action.[6] The plaintiff responds that not only does she allege the warning to comprise an adverse action, but she also alleges that NMMC's failure to either transfer Grice or assist Larry in transferring and NMMC's refusal to grant Larry a leave of absence after she had tendered her resignation fit within Title VII's retaliation proscription. Plaintiff's Mem. Brief in Opp. to the Motions for Summary Judgment at 3.

"Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis,* 77 F.3d at 781–82 (citing *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.) (en banc) (Fourth Circuit noted that "Title VII discrimination cases have focused upon ultimate employment decisions

---

**5.** An activity which is protected under Title VII encompasses more than making a formal charge with the EEOC. *Long,* 88 F.3d at 305–06. " '[O]ppos[ing] any practice made an unlawful employment practice' is broad enough to include . . . using the employer's internal grievance mechanisms." *Id.* at 306 n. 5 (quoting *Hochstadt v. Worcester Found. for Experimental Biology, Inc.,* 425 F.Supp. 318, 324 (D.C.Mass.), *aff'd,* 545 F.2d 222 (1st Cir.1976)). The defendants did not address this element of "protected activity" and the court assumes for the purposes of this motion that Larry's complaints to her

employers, although the plaintiff does not allege that she followed any internal grievance procedure, constitute sufficient "opposition" under Title VII.

**6.** Larry received a warning on February 27, 1995, concerning a breach of NMMC's attendance policy on February 24, 1995, immediately after she had tendered her two-week resignation notice. Bass Aff., April 1, 1996; Larry Aff., April 30, 1996, at 7.

such as hiring, granting leave, discharging, promoting, and compensating."), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981)). Thus, the court is of the opinion that the written warning Larry received after she tendered her resignation cannot constitute an "adverse employment action" as a matter of law. Even had Larry received it prior to her resignation, the warning in no way impinged Larry's wages nor was she demoted as a result of the warning.

 The undersigned is also of the opinion that NMMC's failure to provide assistance to the plaintiff "in finding employment elsewhere in the hospital" does not constitute an adverse employment action sufficient to sustain plaintiff's retaliation claim. The plaintiff does not allege in her Complaint, nor does she state in her brief to the court, that NMMC denied or otherwise interfered with her attempts to transfer.[7] NMMC's failure to help Larry in her quest for a transfer is not the type of action which could be defined as an ultimate adverse employment decision actionable as retaliation under Title VII. *See Landgraf v. USI Film Prods.,* 968 F.2d 427, 431 (5th Cir.1992) ("An adverse negative employment action is a required element of a retaliation claim."), *aff'd,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

 The plaintiff also alleges that NMMC denied her a leave of absence. In contrast to the allegedly retaliatory actions discussed thus far, this claim does not fail as a matter of law on its face because granting or denying leave has been determined to suffice as an ultimate employment decision. *See Dollis,* 77 F.3d at 782. However, the plaintiff only sought and was denied leave *after* she had tendered her resignation. Larry had already decided to terminate her employment and had so informed NMMC before she even requested to be allowed to take a leave of absence. The court finds that NMMC's denial of Larry's request for leave was therefore not in retaliation because Larry had previously resigned.

**7.** The relevant paragraph in her Complaint states:

> [Roger] Brown told Plaintiff to "keep this quiet" and that he would assist her in finding employment elsewhere in the hospital, but no

With these findings, the only remaining possible adverse employment action that Larry suffered after she voiced her complaints concerning Grice to her immediate supervisor and to Donnis Harris and Roger Brown would be the alleged constructive discharge. Neither party addressed constructive discharge as an adverse employment action under the plaintiff's retaliation claim, but instead only discussed it as a separate claim. For brevity's sake and because many issues overlap, the court shall also discuss it as a separate claim.

## C. CONSTRUCTIVE DISCHARGE ARISING OUT OF HARASSMENT

 In order to demonstrate constructive discharge, Larry must prove that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Landgraf,* 968 F.2d at 429 (citing cases).

> The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into involuntary resignation, then the employer has committed a constructive discharge and is as liable as if it had formally discharged the aggrieved employee. *Jurgens v. EEOC,* 903 F.2d 386, 390 (5th Cir.1990). To find that a constructive discharge has occurred, the trier of fact must be satisfied that the working conditions to which the employee was subjected were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 (5th Cir.1980). The burden is on the employee to prove constructive discharge. *Boze v. Branstetter,* 912 F.2d 801, 804–05 (5th Cir.1990).

*Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 242–43 (5th Cir.1993). Furthermore, Larry must also demonstrate a " 'greater severity or pervasiveness of

> effective assistance was rendered. Nor did Plaintiff believe that she should have to be the one to transfer.
>
> Plaintiff's Complaint ¶ 11.

harassment than the minimum required to prove a hostile work environment.'" *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 195 n. 7 (5th Cir.1996) (quoting *Landgraf*, 968 F.2d at 429).[8]

The court is of the opinion that no reasonable juror would find that a reasonable person in Larry's position would have felt compelled to resign. The plaintiff alleges that defendant Grice frequently touched her breasts, stared at her body and made inappropriate comments about parts of her anatomy. Immediately after the last incident, however, Larry reported Grice's behavior to her supervisor and two other people in administration over the BHC. It is undisputed that NMMC subsequently reprimanded Grice and no further incidents occurred until the plaintiff resigned approximately one month later. The court finds that such measures taken by NMMC were reasonably calculated to stop the alleged behavior, and apparently did stop it. The record before the court, taking all of the plaintiff's allegations as true, would not support a finding by any reasonable juror that a reasonable person in Larry's shoes would have felt compelled to resign. *See Landgraf*, 968 F.2d at 430–31.

The facts in the *Landgraf* case are similar to those in the case *sub judice*. The plaintiff in that case was subjected to significant sexual harassment from one of her fellow employees.[9] *Id.* at 429. She complained to her supervisor on several occasions about the behavior before her employer conducted any investigation. *Id.* After inquiring into the situation, the employer issued a written reprimand to the harassing employee, but allowed the employee to remain working in the plaintiff's general area. *Id.* The district court concluded, and the Fifth Circuit agreed, that the employer had taken steps "reasonably calculated to end the harassment." *Id.* at 430.[10] Landgraf's harassment allegedly continued after the reprimand even though she failed to report the later incidents. *Id.* However, the Fifth Circuit affirmed the district court's holding that "[a] reasonable employee would not have felt compelled to resign immediately following the institution of measures ... found to be reasonably calculated to stop the harassment." *Id.* at 430–31. Even though the harassment in *Landgraf* was "substantial," the court held that it "did not rise to the level of severity necessary for constructive discharge." *Id.* at 430.

Similarly in this case, the court is of the opinion that Larry's constructive discharge claim should be dismissed.[11] NMMC took prompt effective steps to stop the plaintiff's alleged harassment as soon as Larry notified her supervisors. Although Grice was not

---

8. The court is faced with an unusual paradigm in this situation. Since, under Fifth Circuit law, a claim of same-gender sexual harassment is not cognizable under Title VII, the question facing the court is whether the plaintiff can prove a constructive discharge claim arising out of sexual discrimination if she must prove more than what is necessary to prevail on a claim of hostile work environment. The appellate court has previously held that when a plaintiff fails to present sufficient evidence to support a hostile work environment claim, "her constructive discharge claim necessarily fails as well." *Weller*, 84 F.3d at 195 n. 7. In this instance, Larry's sexual harassment (hostile work environment) claim shall be dismissed due to the fact that it is a same-gender claim. Is such dismissal alone sufficient to also warrant a dismissal of Larry's constructive discharge claim arising from sexual discrimination? The court is of the opinion that such a holding would be legally proper. Fortunately, as the court bases its holding on other grounds, the undersigned leaves this thorny decision to a later date and perhaps to another court.

9. In fact, the district court found that the harassment was sufficiently severe to support a hostile work environment claim under Title VII. *Landgraf*, 968 F.2d at 429.

10. The *Landgraf* Court noted that

Title VII does not require that an employer use the most serious sanction available to punish an offender, particularly where, as here, this was the first documented offense by an individual employee.

968 F.2d at 430.

11. With the dismissal of the plaintiff's constructive discharge claim, the plaintiff's remaining ground for retaliation is also necessarily insufficient to prevail. *See, e.g., Landgraf*, 968 F.2d at 431. Because the court finds that Larry was not constructively discharged, she did not suffer any adverse employment action which would allow her retaliation claim to survive. With no grounds remaining to form the basis for the plaintiff's retaliation claim, it shall also be dismissed.

transferred out of Larry's work area, the court is of the opinion that NMMC's actions of reprimanding Grice were sufficient under the circumstances and reasonably calculated to end the alleged harassment.

With the dismissal of the federal claims on summary judgment, the court declines to exercise its supplemental jurisdiction over the remaining pendent state law claims and shall dismiss them without prejudice. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 590 (5th Cir.1992).

### *CONCLUSION*

Fifth Circuit precedent sets out that same-gender claims for sexual harassment are not viable under Title VII. Thus, this court is bound to dismiss Carla Larry's Title VII claims for sexual harassment because the alleged defendant harasser in this case is of the same gender as the plaintiff—female. The plaintiff's retaliation claims shall also be dismissed due to the plaintiff's failure to demonstrate any adverse employment action taken against her. Similarly, the plaintiff's constructive discharge claim fails as a matter of law and it shall be dismissed. Finally, the court declines to exercise its supplemental jurisdiction over the remaining state law claims and shall dismiss them without prejudice.