Glenn R. ASHWORTH, Plaintiff,

v.

ROUNDUP CO. dba Fred Meyer, Inc., A
Washington Corporation, Defendant.

No. C94–5322FDB.

United States District Court,
W.D. Washington,
at Tacoma.

June 29, 1995.

**490**

Todd Miller Worswick, Jerome F. McCarthy, Tacoma, WA, for plaintiff.

David John Riewald, Jonathan T. Harnish, Portland, OR, for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BURGESS, District Judge.

Before this Court is Defendant's Motion for Summary Judgment. Plaintiff, Glenn Ashworth, has filed opposition. This motion came before the Court for consideration on May 19, 1995.

## BACKGROUND

The following facts are drawn from the record before the court which includes all pleadings, briefs, affidavits, depositions, and other filings. All inferences are drawn in the plaintiff's favor.

The plaintiff has been employed as a journeyman meat cutter with Fred Meyer since 1985. (Fred Meyer stores are operated by the Defendant.) In September, 1992 the Defendant transferred Mr. Lipton to the Puyallup Fred Meyer store, where the plaintiff worked, to act as the Meat Manager. The position was as a working foreman, paid at an hourly rate, not that of a salaried supervisor. Mr. Lipton performed many of the same duties as the plaintiff. He was the plaintiff's direct supervisor.

Shortly after Mr. Lipton arrived at the store, Mr. Lipton began to engage in inappropriate behavior and make sexually oriented comments directed towards the plaintiff. This behavior consisted of calling the plaintiff "homo" or "faggot", "shaky" or "shaky fuck" due to the plaintiff's nervous disposition, stating "let's butt fuck" and on frequent occasions "Glenn, how come whenever I get around you, I quiver". There was one occasion when Mr. Lipton stated that the plaintiff had "a nice ass" and on another occasion he stated that he wanted to "touch pee-pees" with the plaintiff in the bathroom. When a co-worker asked what Mr. Lipton was doing on his birthday, he stated that "he had a firm picture of Glenn in mind and he was going to go home and jack off". In the one instance involving physical contact, Mr. Lipton "goosed" the plaintiff with the knife sharpening steel, bringing it under the plaintiff's coat and up between his buttocks.

After an episode in February 1993 in which Mr. Lipton threatened to "butt fuck" the plaintiff if he did not get back to work, the plaintiff stated that he had had enough and wanted all references to "homo", "faggot", and "butt fuck" to stop. In response, Mr. Lipton stated, "But, Glenn, I really do want to butt fuck you". Angered, the plaintiff then requested a meeting with Brent Duncan, the Grocery Department Manager of the Puyallup Fred Meyer store.

A meeting immediately took place between the plaintiff, Mr. Lipton, Mr. Duncan, and Mike Plog, the Assistant Grocery Department Manager. During the meeting the plaintiff reported to Mr. Duncan what was occurring. Mr. Duncan asked Mr. Lipton if it was true and he acknowledged that he was making the comments. Mr. Duncan then told Mr. Lipton to stop. The meeting concluded with Mr. Lipton apologizing to the plaintiff, shaking his hand, and hugging him. The plaintiff was instructed to let Mr. Duncan know if the harassment continued. Mr. Lipton's offensive behavior continued, however, the plaintiff did not complain to Mr. Duncan again.

On September 9, 1993, the defendant received a letter from plaintiff's counsel. An investigation was undertaken which confirmed Mr. Lipton's conduct. On September 14, 1993, Alex Leach, the Puyallup Store Director, and John Nadeau, the Regional Food Supervisor, met with Mr. Lipton and informed him that it was necessary that for him to resign or he would be terminated. Mr. Lipton immediately resigned.

In January, 1994, the plaintiff's deposition was taken.[1] When he returned to work the next day, he was transferred to a different store by Lloyd Owings, Defendant's Regional Meat Specialist. The plaintiff did not lose wages, hours, or have any alteration in the terms or conditions of his employment resulting from the transfer. He had no objection to the transfer.

The parties were not able to resolve this case during the pre-filing settlement effort. As a result, a complaint was filed June 14, 1994. In his Amended Complaint, the Plaintiff sets forth five claims for relief: 1) that he was sexually harassed in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.; 2) alleging retaliation in violation of Title VII; 3) sexual harassment in violation of state law (RCW 49.60.030 and RCW 49.60.180); 4) outrage; and 5) negli-

gent, reckless and/or intentional infliction of emotional distress.

The defendant has moved for summary judgment.[2] They contend that same-sex harassment is not actionable under Title VII or state law, and that the plaintiff is not able to establish a prima facie case to support a retaliation, outrage, or negligent infliction of emotional distress claim. In addition, they claim that the plaintiff is not entitled to recover for outrage or intentional infliction of emotional distress on the basis that those damages are recoverable under the sexual harassment/discrimination claims.

## STANDARD FOR SUMMARY JUDGMENT

 Fed.R.Civ.P. 56(c) provides for summary judgment, in part, if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Courts must "view all facts in the light most favorable to the non-moving party". Carpenter v. Universal Star Shipping, S.A., 924 F.2d 1539, 1542 (9th Cir.1991). The party opposing the motion must defend their position with supporting affidavits that "set forth specific facts showing that there is a genuine issue for trial". Fed.R.Civ.P. 56(e); T.W. Electric Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629–30 (9th Cir.1987). The inquiry by the district court at the summary judgment stage is limited to determining whether there is a genuine issue for trial not weighing of the evidence or making credibility determinations. Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir.1990); Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990).

## DISCUSSION

### Title VII and State Law claims for sexual harassment

The plaintiff alleges that he was subjected to sexually harassing behavior and comments from Mr. Lipton which constitute a violation

---

1. The parties attempted to resolve this situation through prefiling settlement procedures which included the taking of depositions, and a mediation.

2. Initially, the plaintiff named RoundUp Company d/b/a Fred Meyer and Mr. Lipton and his

marital community as defendants. By Order entered on October 7, 1994, this Court dismissed defendant Lipton from the federal and state sexual harassment claims. The plaintiff voluntarily dismissed the remaining claims against Mr. Lipton by Order entered April 11, 1995.

of Title VII on the basis of sex discrimination.[3] Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, prohibits sex discrimination in employment. The United States Supreme Court has recognized that sexual harassment constitutes sex discrimination in violation of Title VII. *Meritor Savings Bank, F.S.B. v. Vinson,* 477 U.S. 57, 65–66, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986); *See also, Harris v. Forklift Systems, Inc.,* — U.S. —, —, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

▮▮▮ Two theories of liability for sex discrimination actionable under Title VII exist: quid pro quo and hostile work environment.[4] The plaintiff attempts to prove sexual harassment under a "hostile work environment" theory only.[5] To prove a Title VII violation under the "hostile work environment" theory, the plaintiff must show that there are genuine factual disputes as to: (1) whether a reasonable man would find that Lipton's conduct was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment," and (2) whether RoundUp, Co., once apprised of Lipton's behavior, failed to take adequate remedial and disciplinary action. *See, Steiner v. Showboat Operating Company,* 25 F.3d 1459, 1462 (9th Cir.1994), quoting *Ellison v. Brady,* 924 F.2d 872, 879, 881–83 (9th Cir.1991); accord *EEOC v. Hacienda Hotel,* 881 F.2d 1504, 1514–15 (9th Cir.1989).

In this action a male supervisor allegedly acted in an offensive manner towards a male subordinate. The defendant has raised the threshold question of whether the plaintiff has relief under Title VII for his complaint of same-sex sexual harassment. Prior to an analysis of whether or not the plaintiff has met the burden of establishing a prima facie case of sexual harassment, a determination needs to be made as to whether or not this type of claim, that of same-sex sexual harassment (male-male), is actionable under Title VII.

Several district courts and one Court of Appeals have considered the issue. The courts, however, are split as to whether or not same-sex harassment (male against male) is actionable under Title VII.[6] The early cases, especially those involving quid pro quo sexual harassment, seem to follow the rationale that same-sex harassment is actionable under Title VII. *See, Joyner v. AAA Cooper Transportation,* 597 F.Supp. 537, 542 (M.D.Ala.1983) (found Title VII violation when subordinate male sexually harassed by a male supervisor); *Henson v. City of Dundee,* 682 F.2d 897, 902 (11th Cir.1982); *Wright v. Methodist Youth Services, Inc.,* 511 F.Supp. 307 (N.D.Ill.1981) (quid pro quo same-sex harassment violates Title VII.).

Only one Court of Appeals has ruled on this issue. In *Garcia v. Elf Atochem North America,* 28 F.3d 446 (5th Cir.1994) the Fifth Circuit Court of Appeals took a position on the same-sex harassment issue.

"Finally, we held in *Giddens v. Shell Oil Co.,* No. 92–8533 [12 F.3d 208] (5th Cir. Dec. 6, 1993) (unpublished) that '[h]arassment by a male supervisor against a male subordinate does not state a claim under

---

**3.** "Since Title VII prohibits discrimination in 'terms, conditions, or privileges of employment ...', such cases are persuasive when construing RCW 49.60.180(3)." *Payne v. Children's Home Society of Washington, Inc.,* 892 P.2d 1102, 1105 (1995). *See also, Fahn v. Cowlitz County,* 93 Wash.2d 368, 376, 610 P.2d 857 (1980) (a state statute which is similar in purpose to a federal statute involving the same subject may be construed in accordance with federal court constructions of the federal statute). For this reason both the federal and state sexual harassment claims shall be analyzed within the federal context.

**4.** Quid pro quo harassment occurs whenever "employers condition employment benefits on sexual favors." *Ellison v. Brady,* 924 F.2d 872,

875 (9th Cir.1991); *Nichols v. Frank,* 42 F.3d 503, 508 (9th Cir.1994).

**5.** "Hostile work environment" is conduct which creates intimidating, hostile, or offensive environment, or where the conduct reasonably interferes with work performance. *Ellison v. Brady,* 924 F.2d 872 (9th Cir.1991).

**6.** The Ninth Circuit Court of Appeals has not ruled on this issue. Dicta from a recent case is helpful, but not controlling authority. *See, Steiner v. Showboat Operating Company,* 25 F.3d 1459, 1463 (9th Cir.1994) ("And finally, although words from a man to a man are differently received than words from a man to a woman, we do not rule out the possibility that both men and women working at Showboat have viable claims against Trenkle for sexual harassment".)

Title VII even though the harassment has sexual overtones. Title VII addresses gender discrimination.' Accord *Goluszek v. Smith,* 697 F.Supp. 1452, 1456 (N.D.Ill. 1988). Thus what Locke did to Garcia could not in any event constitute sexual harassment within the purview of Title VII, and hence summary judgement in favor of all defendants was proper on that basis also."

*Id.* at 451–2.

The Fifth Circuit Court in *Garcia* relied on *Goluszek v. Smith,* 697 F.Supp. 1452 (N.D.Ill. 1988) in reaching their decision. The *Goluszek* court held that a male plaintiff alleging sexual harassment, when he was harassed being harassed by male co-workers "because" he was male, is not actionable under Title VII because the "defendant's conduct was not the type of conduct Congress intended to sanction when it enacted Title VII." *Id.* at 1456. This rationale was based on the Court's interpretation of Title VII.

The goal of Title VII is equal employment opportunity. [citation omitted] That goal is accomplished in part by imposing a duty on employers to maintain a working environment free from discriminatory intimidation. *See,* E.E.O.C. Dec. No. 74–05, 6 Fair Empl.Prac.Cas. (BNA) 834 (1973). The discrimination Congress was concerned about when it enacted Title VII is one stemming from an imbalance of power and an abuse of that imbalance by the powerful which results in discrimination against a discrete and vulnerable group. [citation omitted.] Title VII does not make all forms of harassment actionable, nor does it even make all forms of verbal harassment with sexual overtones actionable. The "sexual harassment" that is actionable under Title VII "is the exploitation of a powerful position to impose sexual demands or pressures on an unwilling but less powerful person." [citation omitted.] Actionable sexual-harassment fosters a sense of degradation in the victim by attacking their sexuality. [citation omitted.] In effect, the offender is saying by words or actions that the victim is inferior because of the victim's sex. [citation omitted]

During the times relevant to this claim, Goluszek was a male in a male dominated environment. In fact, with the exception of the reference to a female employee in the letter, each and every one of the figures in this story was male. The argument that Goluszek worked in an environment that treated males as inferior consequently is not supported by the record. In fact, Goluszek may have been harassed 'because' he is a male, but that kind of harassment was not of a kind which created an anti-male environment in the workplace.

*Goluszek v. Smith,* 697 F.Supp. at 1456.

Many recent decisions from other district courts support this reasoning. *See, Oncale v. Sundowner Offshore Services, Inc.,* 1995 WL 133349 (E.D.La. March 24, 1995) (Summary judgment granted for defendant based on *Garcia* holding.); *Benekritis v. Johnson,* 882 F.Supp. 521 (D.S.C.1995); *Myers v. City of El Paso,* 874 F.Supp. 1546 (W.D.Tex.1995); *Polly v. Houston Lighting and Power Co.,* 803 F.Supp. 1, 6 (S.D.Tex.1992); *Hopkins v. Baltimore Gas & Elec. Co.,* 1994 WL 720060 (D.Md.1994); *Fleenor v. Hewitt Soap Company,* C–3–94–182, 1995 WL 386793 (S.D.Ohio Dec. 21, 1994) (motion to dismiss granted on the basis that same-sex harassment is not actionable under Title VII.); *Vandeventer v. Wabash National Corporation,* 867 F.Supp. 790 (N.D.Ind.1994) (Summary judgment against the plaintiff on same-sex harassment issue.); *But see, Vandeventer v. Wabash National Corporation,* 887 F.Supp. 1178 (N.D.Ind.1995) (Court reconsiders their previous ruling making it fact specific instead of the "overbroad" statement that same sex harassment is not actionable under Title VII.) However, a few recent decisions reject the *Goluszek/Garcia* reasoning and are finding same-sex harassment actionable under Title VII in hostile work environment claims. *See, Griffith v. Keystone Steel and Wire,* 887 F.Supp. 1133 (C.D.Ill. 1995) (Same-sex sexual harassment prohibited by Title VII based on irrelevancy of gender of victim, intent of Title VII and quoting *Baskerville v. Culligan Intern. Co.,* 50 F.3d

428, 430 (7th Cir.1995) "Sexual harassment of women by men is the most common kind, but we do not mean to exclude the possibility that sexual harassment of men by women, or men by other men, or women by other women would not also be actionable in appropriate cases.") *Showalter v. Allison Reed Group,* 767 F.Supp. 1205, 1211 (D.R.I.1991), aff'd on other grounds, 984 F.2d 4 (1st Cir. 1993) ("Title VII protects both males and females from harassment."); *EEOC v. Walden Book Company,* 885 F.Supp. 1100 (M.D.Tenn.1995) (Same-sex harassment actionable under Title VII where homosexual supervisor is making sexual advances towards a subordinate of the same sex.); *Roe v. K–Mart Corporation,* 1995 WL 316783 (D.S.C. March 28, 1995) ("Plaintiff's claims are actionable under Title VII prohibition against unwanted sexual advances that create an offensive or hostile working environment or which form the basis for quid pro quo sexual harassment and the plaintiff should be allowed to pursue his claim.")

■ This Court is not persuaded by the findings of the district courts which have ruled that the intention of Title VII is to apply to all forms of harassment regardless of the gender of the alleged harasser and victim. Therefore, this Court accepts the reasoning of the district court in *Goluszek,* the Fifth Circuit Court of Appeals in *Garcia,* and that of the other district courts who have held that same-sex harassment is not actionable under Title VII, to be persuasive in this matter.

■ Equally persuasive to this Court is the fact that the conduct in the case at bar closely resembles the situation in *Goluszek.* As in that case, the plaintiff has failed to provide evidence that Fred Meyer's meat department was an anti-male environment, or that males were treated as inferior to females. The only evidence provided by the plaintiff is his statement that he "believes" Mr. Lipton was harassing him because he was male and that he never made statements of that nature to women who worked at Fred Meyer. However, the plaintiff does not allege that his workplace was other than predominately male, or that an anti-male environment was created. As with *Goluszek* and the other cases cited above, plaintiff's allegations amount to harassment but the conduct is not actionable under Title VII. Accordingly, summary judgment should be granted for the defendant on plaintiff's first and third claims because these claims do not constitute sexual harassment which is actionable under Title VII or Washington state law.

### Retaliation Claim

■ In his second claim for relief, the plaintiff alleges that he was transferred in January 1994 in retaliation for his complaint of discrimination in violation of Title VII. The Ninth Circuit Court of Appeals has set forth the elements of a prima facie case for retaliation in *Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346 (9th Cir.1984) The plaintiff must show (1) that he was engaging in a protected activity, (2) that he suffered an adverse employment decision, and (3) that there was a causal link between the protected activity and the adverse employment decision. *Id.* at 1354.

■ The plaintiff has not established a prima facie case of retaliation. Although he was engaging in a protected activity when he complained about the alleged harassment and his distrust of Mr. Duncan during his deposition, the transfer the next day does not constitute an adverse employment action.

On its face, the timing of the transfer might seem inappropriate, however, the facts surrounding the transfer do not support the contention that the transfer was an adverse personnel decision. The decision to transfer the plaintiff was made by Lloyd Owings, a friend of the plaintiff's, in response to a previous request from the plaintiff to transfer out of the Puyallup store. The position at the Steven store was identical to the position he held in the Puyallup store. There was no impact on the plaintiff's wages, benefits, hours, or other conditions of employment. More telling is the fact that the plaintiff did not complain about the transfer at the time it occurred, or by filing a union grievance.

Due to the plaintiff's failure to establish a prima facie case of retaliation, the defendant's motion for summary judgment regard-

ing the retaliation claim is granted. The plaintiff's second claim for relief is dismissed.

**OUTRAGE AND INTENTIONAL INFLIC-TION OF EMOTIONAL DISTRESS**

This case was present in federal court on the original jurisdiction of the Title VII claims. However, the Title VII actions for sexually hostile work environment and retaliation were the only federal causes of action before this court and diversity does not exist between the parties. Therefore, the Court declines to assert supplemental jurisdiction over the plaintiff's outrage and intentional infliction of emotional distress claims. (Plaintiff's Fourth and Fifth causes of action.) Those claims will be dismissed without prejudice for lack of jurisdiction.

Based on the above, it is hereby

ORDERED:

(1) The parties' request for oral argument is DENIED.

(2) Defendant's Motion for Summary Judgment is GRANTED as to plaintiff's First, Second, and Third claims for relief and those claims shall be DISMISSED.

(3) The Court declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. (Fourth and Fifth causes of action.) Those claims are to be dismissed without prejudice.

(4) The Clerk of the Court shall direct copies of this Order to all parties.