**IT IS HEREBY ORDERED** that defendant's motion to dismiss, or in the alternative to stay [Doc. # 20] is denied.

**IT IS FURTHER ORDERED** that the stay entered in the Court's September 30, 1997 Order is hereby vacated.

**IT IS FURTHER ORDERED** that the parties have thirty (30) days from the date of this Order to respond to any outstanding discovery requests.

Dale RASMUSSON, Plaintiff,

v.

**COPELAND LUMBER YARDS, INC., Defendant.**

No. CV–N–96–258–RAM.

United States District Court, D. Nevada.

Oct. 31, 1997.

Mark Mausert, Reno, NV, for Plaintiff.

Stephen C. Balkenbush, Thorndal, Backus, Armstrong & Balkenbush, Reno, NV, for Defendant.

### *MEMORANDUM DECISION AND ORDER*

MCQUAID, United States Magistrate Judge.

This matter is before the court on Defendant's Motion for Summary Judgment (Doc. # 12). Plaintiff has opposed the motion (Doc. # 15), and Defendant has replied (Doc. # 18).

### I. BACKGROUND

This is a Title VII sexual discrimination case. In April of 1995, Plaintiff Dale Rasmusson ("Rasmusson") was hired as a stock clerk at Copeland Lumber[1]. Rasmusson, a male, complains he was harassed by his male supervisor, George Dimitrievski ("Dimitrievski"). There is no allegation that either are homosexual.

The first incident occurred approximately one month after Rasmusson began work. Dimitrievski commented to fellow employee Gordon Dahl ("Dahl") that they should "take Dale in the back room and fuck him." Dahl replied, "[n]o, I just want to put my cock in his mouth and see what happens." (Doc. # 15, exhibit 1, pp. 22–23). Rasmusson complained to the General Manager, Randy Smith ("Smith"). Smith replied "[t]hat's just the way we talk here at the lumberyard." (Id., p. 25). However, Smith spoke to Dimitrievski and Dahl, who then apologized to Rasmusson. (Id., p. 26).

Despite the apology, the offensive conduct continued, Dimitrievski, on a number of occasions, told Rasmusson to "[c]ome here and give me a blow job." (Id., pp. 26–27, 33). After one of these comments, Rasmusson replied, "George, if I ever did that, you would never return to your wife." (Id., pp. 27–28). Rasmusson made this comment in front of Smith and "some other girls in the office." (Id.). Rasmusson alleges that he complained of several blow job remarks to Smith, whose response was "[w]ell, you know, I've never heard him [Dimitrievski] say anything." (Id.).

Rasmusson testified that he believed Dimitrievski "was saying some of these things to get me angry, to get me fed up because I had gone to Randy (Smith) with it originally when it first happened..." (Id., p. 30). Dimitrievski told Rasmusson, "You don't need to go to Randy. Where did it get you? You no longer get Saturdays off. You haven't gotten a raise. You'll be a stock boy for a long time." (Id.).

Rasmusson alleges that the harassment continued. Dimitrievski called him "a lot of degrading names." (Id., p. 31). Dimitrievski pulled Rasmusson's head towards his crotch as Rasmusson was bending over to retrieve a toolbox. (Id.). Another time, Dimitrievski

---

1. Unless otherwise noted, the facts are taken primarily from Rasmusson's Opposition to Summary Judgment (Doc. # 15), as well as from the various depositions found in both parties motions.

grabbed Rasmusson in a bear-hug and "started humping me like a dog." (Id., pp. 31–32). Dimitrievski admitted he had a habit of grabbing male employees, and Smith was grabbed at least one time. (Id., pp. 35–36).

Rasmusson claims that he complained to Smith about Dimitrievski's conduct at least a half a dozen times, but Smith took no further action. (Id., p. 33). He finally quit complaining to Smith "because it was going nowhere." (Id., pp. 33–34). Rasmusson was informed by some female employees at the office that Dimitrievski warned Smith not to take any action. Specifically, Dimitrievski threatened to reveal to corporate headquarters that Smith was sexually harassing the female employees. (Id., p. 49). As a result, Rasmusson alleges that Smith did not handle his complaints.

Around October 9, 1995, Rasmusson contacted Randy Stedman ("Stedman"), Copeland's Director of Human Resources, to complain about Dimitrievski (Doc. # 12, exhibit A, p. 40). When Rasmusson was hired, he was given an Employee Handbook which defined sexual harassment and stated, "[a]ny employee who believes they have been subjected to sexual harassment should contact the Director of Human Resources in confidence." (Id., exhibit B). On October 12, 1995, Rasmusson provided a written complaint to Stedman. (Id., exhibit A, pp. 43–44). A day or two later, Stedman came to the lumber yard to investigate Rasmusson's complaint. (Id., p. 44). Stedman interviewed Dimitrievski. (Id.). A few days later, when the investigation was complete, Dimitrievski was terminated. (Id., pp. 50–51).

Shortly thereafter, Dahl (who is a management level employee), informed Rasmusson that corporate headquarters had ordered a close inspection of all Rasmusson's sales tickets. (Doc. # 15, exhibit 1, p. 78). When Rasmusson asked for an explanation, he was told it was "not your business." (Id.). Rasmusson, now believing Copeland was "looking over my shoulder to find any and every mistake that might be made," began to make mistakes when writing sales tickets. (Id., pp. 79–81, 84, 96). Rasmusson was told by some office workers that he wasn't making as many mistakes as other employees had in the past. (Id., p. 85).

On December 20, 1995, Rasmusson was terminated due to poor work performance. (Doc. # 12, exhibit A, pp. 99–101). During Rasmusson's employment, he had a history of absenteeism, and in November and December 1995, he was counseled regarding compliance with Copeland's policy of two breaks per day. (Id., pp. 19–20, exhibit E, # 17).

## II. DISCUSSION

Rasmusson has alleged four causes of action: (1) Hostile Environment Discrimination in violation of Title VII, (2) Quid Pro Quo Discrimination in violation of Title VII, (3) Retaliation in violation of Title VII, and (4) Negligence (Doc. # 1).

Copeland has moved for summary judgement on all claims (Doc. # 12).

### A. Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which the moving party believes indicates the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party has met its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Additionally, the nonmoving party must show that the dispute is genuine, i.e., that the

evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively; only that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Association,* 809 F.2d 626, 630 (9th Cir.1987).

In determining whether to grant or deny the motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any. Fed.R.Civ.P. 56(c). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)). However, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

### B. Title VII: Hostile Environment and Quid Pro Quo

Title VII of the 1964 Civil Rights Act outlaws sex discrimination in an employment context. 42 U.S.C. § 2000e *et seq.* This general prohibition extends to sexual harassment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). There are two theories by which sexual harassment can be found under Title VII: hostile environment and quid pro quo. *Ellison v. Brady,* 924 F.2d 872, 875 (9th Cir.1991).

However, there are two preliminary issues which must be resolved before Rasmusson can prove a Title VII violation based on one of the above theories. First, there is the issue of whether a claim for harassment exists when both the harasser and victim are of the same gender. Second, there is the issue of whether Rasmusson was harassed because of his gender, as required by the statutory language of Title VII.

### 1. Same Gender Sexual Harassment

■ A threshold inquiry in the case at bar is whether a cause of action exists for same gender sexual harassment under Title VII. This issue is undecided in both the Supreme Court and the Ninth Circuit[2]. However, case law from other circuits, as well as Ninth Circuit decisions on similar issues, provide guidance.

Title VII, on its face, draws no distinction between men and women, and the Supreme Court has never indicated that only opposite gender harassment is actionable. The prohibition against sex discrimination was added to the language of Title VII by a congressional opponent in a last minute attempt to defeat the bill. 110 Cong.Rec. 2577–84 (1964). Thus, there is no indication that Congress meant for Title VII to apply solely to opposite gender harassment. The EEOC describes sexual harassment in gender neutral terms[3]. Furthermore, the EEOC Compliance Manual states "the victim does not have to be of the opposite sex from the harasser..."[4] EEOC Compliance Manual § 615.2.

---

**2.** The Supreme Court has granted certiorari in a case which held that same gender harassment is not actionable. *Oncale v. Sundowner Offshore Services, Inc.,* 83 F.3d 118 (5th Cir.1996) *cert. granted* —— U.S. ——, 117 S.Ct. 2430, 138 L.Ed.2d 192 (1997).

**3.** EEOC guidelines state in relevant part: "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or

rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." 29 C.F.R. § 1604.11(a) (1996).

**4.** EEOC guidelines, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance..." *Meritor,* 477 U.S. at 65, 106 S.Ct. at 2405 (citation omitted).

A majority of federal circuit courts have either held or suggested that same gender sexual harassment is actionable. *See Morgan v. Massachusetts Gen. Hospital*, 901 F.2d 186, 192–193 (1st Cir.1990) (assuming without discussion that same gender harassment is actionable); *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 148 (2d Cir.1993) *cert. denied* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994) (Van Graafeiland, J., concurring) ("harassment is harassment regardless of whether it is caused by a member of the same or opposite sex."); *Tomkins v. Public Serv. Elec. & Gas Co.*, 568 F.2d 1044, 1047 n. 4 (3d Cir.1977) ("Title VII prohibits discrimination against men as well as women."); *Wrightson v. Pizza Hut of America*, 99 F.3d 138, 142–43 (4th Cir.1996); *Yeary v. Goodwill Indus. Knoxville, Inc.*, 107 F.3d 443, 447–48 (6th Cir. 1997); *Doe v. City of Belleville, Illinois*, 119 F.3d 563 (7th Cir.1997); *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376 n. 4, 1377, 1379 (8th Cir.1996); *Purrington v. University of Utah*, 996 F.2d 1025, 1028–31 (10th Cir.1993) (assuming without discussion that same gender harassment is actionable); *Fredette v. BVP Management Assocs.*, 112 F.3d 1503, 1510 (11th Cir.1997).

A minority of courts have held that same sex harassment is not actionable under Title VII. While recognizing a claim for same sex harassment when one party is homosexual, the Fourth Circuit does not recognize same sex harassment when the harasser and victim are both heterosexual. *McWilliams v. Fairfax County Bd. Of Supervisors*, 72 F.3d 1191, 1195–96 & n. 5 (4th Cir.1996) *cert. denied*, —— U.S. ——, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996); *Wrightson*, 99 F.3d at 142–43. The Fifth Circuit does not recognize a cause of action for same sex harassment under any circumstances. *Garcia v. Elf Atochem North America*, 28 F.3d 446 (5th Cir. 1994)[5]. The *Garcia* court relied on the reasoning in *Goluszek v. H.P. Smith*, 697 F.Supp. 1452 (N.D.Ill.1988), to support its holding of non-actionability regarding same gender harassment.

The Plaintiff in *Goluszek* was a shy, simple man with little sexual experience. He was teased by his co-workers, who urged him to have sex with a woman, showed him pictures of nude women, accused him of being gay, and poked him in the buttocks with a stick. The court held that same sex harassment was not actionable under Title VII, reasoning that "[t]he discrimination Congress was concerned about when it enacted Title VII is one stemming from an imbalance of power and an abuse of that imbalance by the powerful which results in discrimination against a discrete and vulnerable group.... The 'sexual harassment' that is actionable under Title VII 'is the exploitation of a powerful position to impose sexual demands or pressures on an unwilling but less powerful person.'" *Id.* at 1456, quoting from *Sexual Harassment Claims of Abusive Work Environment Under Title VII*, 97 Harv.L.Rev. 1449, 1451 (1984).

The reasoning behind *Goluszek* and *Garcia* has been criticized by the district court of D.C.:

First, the support underlying its central proposition came not from Congress, but from a law student. Second, the student note was written long before the Supreme Court even handed down *Meritor Savings Bank*. Third..."there is nothing in the language of Title VII to support a finding that same-sex harassment is not prohibited...On the contrary, the language of the statute is non-exclusive, creating a broad rule of workplace equality. Title VII makes discrimination at the workplace on the basis of gender equality illegal, period." Fourth, *Goluszek* departs from *Meritor*'s clear command that "when a supervisor sexually harasses a subordinate because of the subordinate's sex, the supervisor discriminates on the basis of sex." [L]ast, the harms resulting from same-sex harassment are no less severe than those perpetrated by harassers of the opposite sex.

*Williams v. District of Columbia*, 916 F.Supp. 1, 8–9 (D.D.C.1996) (citations omitted).

In the Ninth Circuit, three district courts have found that same sex harassment claims are actionable. *Tanner v. Prima Donna Re-*

---

**5.** The Fifth Circuit relied explicitly on *Garcia* in the *Oncale* decision. As stated earlier, certiorari was granted in *Oncale*. —— U.S. ——, 117 S.Ct. 2430, 138 L.Ed.2d 192 (1997).

*sorts, Inc.,* 919 F.Supp. 351 (D.Nev.1996); *Easton v. Crossland Mortgage Corp.,* 905 F.Supp. 1368 (C.D.Cal.1995), *rev'd on other grounds,* 114 F.3d 979; *Storey v. Chase Bankcard Services, Inc.,* 970 F.Supp. 722 (D.Ariz.1997). The *Tanner* court rejected the reasoning of *Goluszek* as unsupported by Legislative history and as a departure from Supreme Court precedent established in *Meritor. Tanner,* 919 F.Supp. at 354. The *Easton* court found same sex harassment to be actionable based on the plain language of Title VII and the trend of case law. *Easton,* 905 F.Supp. at 1379–80. The *Storey* court found same sex harassment actionable after a review of the language of Title VII, the legislative history, and the trend of case law both in all circuits and in the Ninth circuit. *Storey,* 970 F.Supp. at 730–31. One district court in the Ninth Circuit has rejected same sex harassment under Title VII. *Ashworth v. Roundup Co.,* 897 F.Supp. 489 (W.D.Wash. 1995). In support of its holding, the *Ashworth* court relied heavily on *Garcia* and *Goluszek.*

Although the appellate court in the Ninth Circuit has not formally decided the issue, it has suggested that same sex harassment is actionable. *See Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1464 (9th Cir.1994) *cert. denied,* 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995) ("we do not rule out the possibility that both men and women working at Showboat have viable claims against [the male employee] for sexual harassment."); *Blueford v. K.W. Prunty,* 108 F.3d 251, 254 (9th Cir.1997) (stating as dictum in a § 1983 prisoner sexual harassment case, "[w]e believe Blueford asserts the right, as a male prisoner, not to be subject to a male prison official's immature sexually based diatribes or to be the recipient of the prison official's feigned combative strikes."). Furthermore, the *Blueford* court recognized that "the pendulum seems recently to have swung in favor or permitting same-sex harassment claims..." *Id.* at 255. The comments by the appellate court, although they do not carry the weight of precedent, suggest rather strongly that the Ninth Circuit would recognize a cause of action for same sex harassment, if specifically faced with the issue.

The court concludes that a claim of same sex harassment is actionable under Title VII.

This conclusion is supported by the gender neutral language of Title VII, the EEOC and the Supreme Court, as well as the absence of any legislative intent to the contrary. A majority of federal appellate courts which have decided the issues have recognized a claim for same sex harassment, as well as by three district courts in the Ninth Circuit.

## 2. Discrimination Because of the Victim's Sex

■ Under Title VII, it is unlawful for an employer "to discriminate against any individual...because of such individual's...sex." 42 U.S.C. § 2000e–2(a)(1); *Meritor,* 477 U.S. at 66, 106 S.Ct. at 2405 ("a plaintiff may establish a violation of Title VII by proving that discrimination based on sex created a hostile or abusive work environment."). Thus, in order to survive Motion for Summary Judgment, Rasmusson must offer evidence sufficient to create a genuine issue of material fact as to whether he was discriminated against because of, i.e. based on, his sex.

There is a general presumption that when a woman is harassed by a man, it is "because of" her sex. A like presumption in same-sex harassment cases is not so readily made. Some courts presume just the opposite, that the harassment is not because of sex, but for some other reason, i.e. " 'because of' the victim's known or believed prudery, or shyness... 'because of' the perpetrator's own sexual perversion, or obsession or insecurity... 'because of' their [the perpetrator's] vulgarity, insensitivity and meanness of spirit." *McWilliams,* 72 F.3d at 1196. It is for this reason that some courts only recognize same sex harassment, "because of sex," where the harasser is a homosexual. *Id.* at 1195–96; *Wrightson v. Pizza Hut of America,* 99 F.3d 138, 141 (4th Cir.1996). In *Wrightson,* the Fourth Circuit found but-for causation in a case where a male employee was subjected to sexual advances by a homosexual co-employee. *Id.* at 142. The court found the harassment, because of the sexual preference of the harasser, would not have taken place but for the victims gender. *Id.* Using like reasoning, the Sixth Circuit has held that an individual, in a same sex scenar-

io, is harassed because of his sex when the harasser is sexually attracted to the victim. *Yeary,* 107 F.3d at 448. In *Yeary,* the court found that a male employee was harassed "because of" his sex when a male co-employee was sexually attracted to him. The court found that the co-employee's sexual attraction created "an institutional disadvantage for Yeary...simply by virtue of the fact that he was a man. He [Yeary] had to put up with abuse and harassment that women there did not have to endure." *Id.*

The Seventh Circuit, although it has not adopted a specific standard, has applied Title VII causation more liberally. In *Doe,* the court found that an individual was harassed because of his sex, despite the fact that both the victim and the harasser were heterosexual. *Doe v. City of Belleville, Illinois,* 119 F.3d 563, 581 (7th Cir.1997). The victim in *Doe* was a sixteen year old male who wore an earring. One of his male co-workers began calling the victim a homosexual, said he should take the victim out in the woods and have sex with him, grabbed the victim's testicles, and routinely referred to the victim as "bitch." The court found that this harassment was "because of" the victim's sex, because the victim did not conform to the harasser's idea of how a normal male should appear. *Id.* Without establishing a particular causation test, the court specifically held that "gender stereotyping establishes the link to the plaintiff's sex that Title VII requires." *Id.*

The Eighth Circuit, like the Seventh, has applied Title VII causation broadly. In *Quick,* the court found that an employee could have been harassed because of his sex although both the employee and his harasser were heterosexual males. *Quick,* 90 F.3d at 1379. The employee had his testicles grabbed on numerous occasions, and was often referred to as a homosexual by male-employees. The court held that an individual is harassed because of their sex if "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the opposite sex are not exposed." *Id.* at 1378 (quoting from *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 25, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring)). The court in *Quick* remanded the case, finding that there were

material questions concerning whether men received worse treatment than women at the workplace. *Id.* at 1379.

The district court in *Storey* utilized the "but for" causation test in determining the viability of a same-sex harassment claim under Title VII. *Storey,* 970 F.Supp. 722, 725 (citing *Price Waterhouse,* 490 U.S. at 240 n. 6, 109 S.Ct. at 1785 n. 6; *Bundy v. Jackson,* 641 F.2d 934, 942 n. 7 (D.C.Cir.1981)). The "but for" causation test is gender neutral. The crucial inquiry in applying the test is simply whether the complaining employee would have suffered the same harassment had he or she been of a different gender. *Id.*

The court in *Storey* employed the "but for" test to find that a female supervisor had an actionable claim under Title VII against a supervisor who had made sexual advances towards her. *Id.* at 731. For support, the court cited guidelines of the EEOC that stand for the proposition that same sex harassment may satisfy "but for" causation. In its guidelines the EEOC sets forth the causation inquiry as "whether the harasser treats a member or members of one sex differently from members of the other sex." *Id.* at 725. The guidelines do not require "homosexual" preferences in applying the but-for test, and state specifically that, "[t]he victim and the harasser may be of the same sex where sexual harassment is based on the victim's sex (not on the victim's sexual preference) and the harasser does not treat employees of the opposite sex the same way." *Id.* Thus, if a plaintiff can set forth enough evidence to show that "but for" his or her gender he or she would not have been harassed, regardless of the sexual preference of either the victim or the harasser, his or her claim of sexual harassment is viable under Title VII.

Rasmusson's case presents a difficult issue. Here, the court is faced with the sexual harassment and or discrimination of a heterosexual male employee, perpetrated by another heterosexual male employee. Rasmusson has presented evidence that he was the primary target of Dimitrievski's alleged unwelcome, sexually explicit, abusive, and offensive conduct. Rasmusson claims Dimitrievski demanded blow jobs from him on several

occasions, made graphic sexual statements, called him insulting names and made sexually suggestive motions towards him (Opposition to Defendant's Motion for Summary Judgment, Doc # 15, pp 1–7). Rasmusson has also presented evidence to indicate that other men in the lumberyard were treated with like disregard by Dimitrievski, albeit not as severe. In fact, Dimitrievski himself admitted to having a habit of grabbing male employees, and Smith, a male manager, was grabbed at least one time. (Doc # 15, pp 35–36). There is insufficient evidence in the record to demonstrate that Dimitrievski subjected female employees at Copeland to the same type of sexually degrading behavior with which he harassed Rasmusson. These factual issues remain unresolved.

Sexual orientation alone is not relevant to this case. The plain language of Title VII addresses harassment "because of" sex or gender, not because of sexual orientation. Harassment can include "discriminatory intimidation, ridicule and insult." *Harris,* 510 U.S. at 21, 114 S.Ct. at 370 (citations omitted). Thus, Rasmusson need not present evidence that the harassment was motivated by sexual preference or urges, only that it was caused by virtue of the fact that Rasmusson was a male.

The court is inclined to follow the but-for causation test adopted by the district court in *Storey,* and suggested by EEOC regulations for use in same-sex harassment cases. In applying the simple but-for analysis to the facts of this case, a genuine issue of material fact is present as to whether Rasmusson was treated differently from female employees at Copeland, and would not have been treated differently, but-for the fact that he was a male.

### 3. Hostile Environment Discrimination

■ Rasmusson alleges that Dimitrievski's sexually harassing conduct created a hostile work environment at Copeland. To prevail on a claim of sexual harassment based on a hostile environment Rasmusson must show: (1) he was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct "was

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ellison v. Brady,* 924 F.2d 872, 875–76 (9th Cir.1991). Hostility in the workplace environment has two components: objective hostility measured from the perspective of a reasonable person with the same characteristics as plaintiff, and subjective perception of the hostility by the victim. *Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (9th Cir.1995). Further, "[h]ostility must be measured based on a totality of the circumstances." *Id.* An employer is liable for sexual harassment under a hostile environment theory, "only if, after the employer learns of the alleged conduct, he fails to take adequate remedial measures." *Yamaguchi v. U.S. Dept. of the Air Force,* 109 F.3d 1475, 1483 (9th Cir.1997); *Ellison,* 924 F.2d at 881–82.

Copeland's argument against Rasmusson's hostile environment claim is that Dimitrievski's actions were not sexual in nature, i.e., "because of sex," and that his actions were, although "crude and rude" not sufficiently "severe or pervasive" so as to alter Rasmusson's employment in any respect nor to create an abusive environment (Doc. # 18).[6] To survive summary judgment, Rasmusson must show that genuine issues of material fact do exist as to these claims.

Rasmusson's primary complaint is that Dimitrievski discriminated against him and harassed him because of his sex. The alleged conduct Rasmusson complains of includes requests and comments regarding sexual favors, sexual positions and sexual innuendo. Rasmusson alleges that although he was the target of Dimitrievski's most abusive conduct, other men were treated similar in some respects, i.e., Dimitrievski gave bear hugs to and grabbed other male employees (Doc # 15). In light of the significant factual questions raised by Rasmusson regarding the "nature" of Dimitrievski's acts coupled with issues raised by the foregoing section discussing discrimination "because of" sex, there is sufficient evidence before the court to raise a genuine issue of material fact as

---

**6.** Copeland does not dispute that Dimitrievski's conduct was "unwelcome," thus the court will not address that issue for purposes of Defen-

dant's Motion for Summary Judgment (Doc. # 18).

whether Dimitrievski's actions were indeed sexual in nature.

The third element of a hostile environment claim addresses the severity and pervasiveness of the conduct complained of. "...[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison*, 924 F.2d at 878. While it is true a single act if sufficiently severe could be enough, "repeated incidents create a stronger claim of hostile environment, with the strength of the claim depending on the number of incidents and the intensity of each incident." *Id.* (citing *Andrews v. Philadelphia*, 895 F.2d 1469, 1484 (1990); *Carrero v. New York City Housing Authority*, 890 F.2d 569, 578 (2d Cir.1989); EEOC Compliance Manual § 615 (CCH 1988)). Rasmusson has set forth several instances of alleged harassing conduct perpetrated by Dimitrievski. These instances include several requests for blow jobs, a bear hug coupled with humping motions, an instance where Dimitrievski pulled Rasmusson's head into his crotch while simulating a blow job, and several instances of Dimitrievski making degrading and vulgar remarks directed at Rasmusson (Doc # 15). Copeland argues that the alleged harassing conduct was "jocular" at best and did not create an abusive environment for Rasmusson nor alter his working conditions in any manner (Doc. # 18). Contrary to Copeland's assertions, Rasmusson claims that after complaining about Dimitrievski's conduct his work conditions changed dramatically. He claims Dimitrievski, himself a manager at Copeland, threatened his employment, threatened to change his days off and temporarily demoted him from sales clerk to stocker (Doc. # 15). Further, Rasmusson contends that his sales tickets were subjected to excessive scrutiny after complaining to the Director of Human Resources, which caused him to make several mistakes he would not have made otherwise (Id.). Ultimately, Rasmusson was fired from Copeland for poor performance (Id.).

Rasmusson has provided sufficient evidence to raise a genuine issue of material fact as to whether Dimitrievski's action were adequately severe and pervasive so as to alter Rasmusson's conditions of employment and create a hostile environment.

The next issue which must be addressed is that of remedial action. Copeland initially argues that Rasmusson's claim fails because Copeland is not liable for Dimitrievski's actions under agency principles (Doc. # 18). However, in the Ninth Circuit an employer has been held liable under Title VII, when they failed to "remedy or prevent a hostile or offensive work environment of which management level employees knew, or in the exercise of reasonable care should have known." *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1516 (9th Cir.1989). Here, Dimitrievski, Dahl, and Smith were all management level employees at Copeland Lumber Yard. Because Dimitrievski was the alleged harasser and because all three knew of the allegedly hostile environment, under the standard employed in *Hacienda* there is a basis for holding Copeland liable under Title VII. Second, Copeland argues that they are not liable because Dimitrievski's actions were not within the scope of his employment (Doc. # 18). In the Ninth Circuit, the scope of employment standard was implicitly rejected by the court in *Hacienda Hotel. Id.*

When an employee is harassed, employer liability depends upon whether the employer took sufficient remedial action in response to employee complaints. *Hacienda Hotel*, 881 F.2d at 1516. The employer remedy should be, "reasonably calculated to end the harassment." *Ellison* 924 F.2d at 882 (quoting *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir. 1983)). "...[T]he reasonableness of the employer's remedy will depend on its ability to stop harassment;...the adequacy of the remedy...[on its] ability to persuade potential harassers from unlawful conduct." *Id.* (footnote omitted).

Copeland's remedy was based on their sexual harassment policy. When Rasmusson was hired he was given an employee handbook setting forth the procedure to follow in making a sexual harassment complaint (Doc # 12, Exhibit B). Rasmusson signed the handbook acknowledging receipt of the book and taking full responsibility for reading and complying with the provisions therein (Id.). The facts presented to the court are that after the first incident of alleged sexual harassment by Dimitrievski, Rasmusson

complained to Randy Smith, general manager of the Copeland store in which he worked. As a result, Smith talked with Dimitrievski and another supervisor, Dahl, about the complaint (Doc. # 15). Subsequently, Dimitrievski and Dahl apologized to Rasmusson (Id.). Regardless of the apology, Rasmusson claims the harassment did not stop (Id.). Again, Rasmusson complained to Smith, but this time Smith didn't react. In Rasmusson's deposition he testifies that he repeatedly complained to Smith, "at least a half a dozen times," after the initial incident but Smith failed to take any remedial action (Doc. # 15, Exhibit 1). As a result of Smith's failure to act, Rasmusson complained directly to the Director of Human Resources. Thereafter, an investigation took place and Dimitrievski was discharged from employment at Copeland (Id.).

Rasmusson argues that Copeland knew or had reason to know of the alleged sexual harassment, because of his repeated complaints to general manager Smith, yet failed to take immediate and proper remedial action (Doc. # 15). Copeland argues that the procedures for lodging sexual harassment complaints were clearly set out in the employee handbook given to and signed for by Rasmusson (Doc. # 18). Copeland contends Rasmusson's complaints to Smith are not relevant because in complaining to Smith, Rasmusson failed to follow the proper procedures set forth in the handbook. Copeland further argues that once Rasmusson did go through the proper channels, immediate and proper remedial action was taken; to wit, an investigation into the complaint took place and Dimitrievski's employment was terminated (Doc. # 18).

The existence of a grievance procedure while "plainly relevant" is not necessarily dispositive in insulating employers from Title VII liability. *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408. Likewise, an employee's failure to invoke such grievance procedures doesn't necessarily absolve employers of such liability. *Id.*; *Hacienda Hotel* 881 F.2d at 1516.

Here, the court is faced with a situation where a sexual harassment policy exists, the harasser is the immediate supervisor of the victim, management level employee's were aware of the alleged harassment, the initial complaint of harassment to the general manager invoked a response, subsequent complaints to the general manager were ignored and a final complaint to the Director of Human Resources resulted in termination of the perpetrator. In light of the foregoing circumstances, and others presented in this case, it is clear that resolution of the issue of remedial action requires a careful weighing of the evidence. As such, the issue properly falls within the province of the fact-finder and not the court on a motion for summary judgment. Rasmusson has provided sufficient evidence to demonstrate that genuine issues of material fact remain concerning whether he acted reasonably in making his complaints to Smith rather than the Director of Human Resources, and whether Copeland acted appropriately and promptly in taking remedial action on his sexual harassment complaints.

### 4. Quid Pro Quo Discrimination

■ Quid Pro Quo discrimination occurs when "whenever an individual explicitly or implicitly conditions a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct." *Nichols v. Frank,* 42 F.3d 503, 511 (9th Cir. 1994). Rasmusson's Quid Pro Quo claim fails because Dimitrievski never "relie[d] on his apparent or actual authority [in order] to extort sexual consideration from an employee." *Id.* at 509, quoting from *Henson v. City of Dundee,* 682 F.2d 897, 910 (11th Cir.1982).

The *Nichols* case provides an example of Quid Pro Quo discrimination. The Plaintiff was a woman who worked the late shift at a post office. Her supervisor conditioned employment benefits on sexual favors, and had the Plaintiff perform oral sex during conversations about sick leave. The Plaintiff testified that she had oral sex with her supervisor on many occasions because she "knew he could fire me because he was a superintendent." *Id.* at 509.

In the case at bar, there is no evidence that Rasmusson ever performed sexual favors for Dimitrievski in return for employment benefits. Dimitrievski apparently threatened Rasmusson's job only once. However, this threat was not made along

with a request for sexual favors, nor were any sexual favors granted. Rather, the comment was made because Dimitrievski was upset that Rasmusson had lodged a complaint with 'Smith. The comment in full states: "You don't need to go to Randy. Where did it get you? You no longer get Saturdays off. You haven't gotten a raise. You'll be a stock boy for a long time[7]." (Doc. # 15, exhibit 1, p. 30). The comment is clearly not conditioned on sexual favors.

Therefore, the facts fail to show that Dimitrievski demanded acquiescence to sexual overtures in exchange for a tangible job benefit. Rather, any comments made concerning the security of Rasmusson's job were made because Dimitrievski was upset by Rasmusson's complaints. Thus, a reasonable jury could not find that Rasmusson was subject to Quid Pro Quo discrimination, and summary judgment is appropriate.

### C. Title VII: Retaliation

■ To make out a prima facie case of retaliation Rasmusson must prove (1) that he acted to protect his Title VII rights, (2) that an adverse employment action was thereafter taken against him, and (3) that there is a causal link between the two events. *Steiner,* 25 F.3d at 1464, citing to *Jordan v. Clark,* 847 F.2d 1368, 1376 (9th Cir.1988). Once Rasmusson makes out a prima facie case, the burden shifts to Copeland to advance a legitimate, non-retaliatory reason for any adverse action taken against Rasmusson. *Id.* at 1464–65, citing *Jordan,* 847 F.2d at 1376, and *Miller v. Fairchild Industries, Inc.,* 797 F.2d 727, 730–31 (9th Cir.1986). Rasmusson alleges acts of retaliation, culminating in his termination. The court finds Rasmusson has alleged sufficient facts to raise a question of material fact as to whether his termination was an act of retaliation by Copeland.

Rasmusson's act to protect his Title VII rights were his numerous complaints concerning Dimitrievski's behavior. Copeland argues that because Title VII was not violat-

ed, Rasmusson could not have acted to protect his Title VII rights when he complained of harassment. This argument is directly refuted by case law. To satisfy the first element of a retaliation claim, a Title VII Plaintiff need only have a reasonable belief that the conduct complained of was unlawful under Title VII. *Trent v. Valley Elec. Ass'n, Inc.,* 41 F.3d 524, 527 (9th Cir.1994). The reasonableness of Rasmusson's belief is analyzed under an objective standard which makes allowance "for the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims." *Moyo v. Gomez,* 40 F.3d 982, 985 (9th Cir. 1994). The facts demonstrate that Rasmusson had a reasonable belief that he was subject to unlawful sexual discrimination. Rasmusson was the subject of several comments of a sexual nature, as well as two incidents involving physical contact. Viewed objectively, a reasonable person in Rasmusson's situation would feel that they may be the victim of some type of sexual discrimination. Thus, Rasmusson has satisfied the first element of a prima facie retaliation claim.

As to the second element, there are sufficient factual questions whether Rasmusson suffered adverse employment decisions culminating in his termination[8], and whether there is a causal link between his complaints and these adverse employment decisions to preclude summary judgment.

Rasmusson complained about Dimitrievski from April, 1995, until Dimitrievski was fired in October of 1995. Rasmusson was fired two months later, due to poor performance. However, the events that occurred in that two months span suggest that a reasonable jury may be able to find retaliation. After Dimitrievski was fired, Rasmusson was informed by Dahl that Copeland headquarters informed him to watch all Rasmusson's tickets for errors. (Doc. # 15, exhibit 1, p. 78). When Rasmusson asked why, Dahl replied it was "not your business." (Id.). It must be

---

**7.** It is unclear whether Dimitrievski made good on his threat to deny Rasmusson any Saturdays off.

**8.** According to Copeland, Rasmusson has not asserted his termination as an adverse employment action. Instead, Copeland argues Rasmus-

son has alleged that the adverse employment action was his demotion and denial of days off. However, this argument has no merit. Rasmusson's complaint clearly states that Rasmusson was allegedly terminated in retaliation for his complaints. (Doc. # 1).

noted that Dahl, along with Dimitrievski, was involved in the first comment of which Rasmusson complained. A jury could make a reasonable inference in Rasmusson's favor that Dahl and Dimitrievski had a friendly relationship, and that Dahl would thus have some motive to get even with Rasmusson for Dimitrievski's termination.

After Dahl made the comment about Copeland headquarters, Rasmusson said he would take his tickets to the girls in the office for double-checking. (Id., p. 79). Dahl replied, "you can't take your tickets to the girls anymore." (Id.). Again, Rasmusson was informed the reason was none of his business. (Id.). As a result of this close scrutiny, Rasmusson began to make errors, and was told his errors were excessive. (Id., pp. 79–80, 84). Rasmusson was told by the girls in the office that other employees, including Dahl, had a "much higher mistake rate." (Id. p. 80, 85). These allegations, viewed in a light most favorable to Rasmusson, suggest that a reasonable jury could find that Copeland, acting through Dahl, retaliated against Rasmusson in violation of Title VII.

Factual questions remain whether there was a legitimate, non-retaliatory reason for Rasmusson's termination. Copeland argues that Rasmusson was fired for poor performance, most notably the errors in his sales tickets. However, these errors were quite possibly caused by Dahl's actions, and are therefore not a legitimate, non-retaliatory reason. Copeland also alleges that Rasmusson was fired for failure to get approval before taking a lunch break, and failure to comply with Copeland's smoking policy. However, from the record, it appears that Rasmusson failed to get approval before lunch only once, and likewise was informed of problems with the smoking policy only once. Furthermore, both incidents occurred long before Rasmusson was fired. (Doc. #12, exhibit E, pp. 3–4, 7).

Copeland alleges that Rasmusson had a problem with absenteeism. (Doc. #13, exhibit F, p. 62). Rasmusson has admitted his absence rate was unacceptable. (Doc. #12, exhibit E, p. 4). Copeland also alleges that Rasmusson took excessive breaks. However, Rasmusson was not clearly terminated because of absenteeism or excessive breaks. Rasmusson was apparently fired on the spot following a verbal altercation with his new supervisor. (Doc. #12, exhibit A, pp. 99–101). Thus, it is unclear what weight Rasmusson's past absences carried when Copeland decided to terminate him. Similarly, although it is unclear whether the new manager was aware of Rasmusson's excessive mistakes, it is reasonable to infer that Dahl would have informed the new manager of Rasmusson's past problems. A reasonable jury could find that Rasmusson's termination was justified, and they could just as easily find that Rasmusson's poor performance leading up to his termination was caused through retaliatory motives of Copeland employees, especially Dahl. The questions concerning the causal link between Rasmusson's complaint and his termination are material questions of fact that are best resolved by a jury.

### D. Negligence

Both parties have agreed to dismiss the negligence claim. (Doc. #15, pp. 16–17; Doc. #18, p. 12). Accordingly, summary judgment on this claim is appropriate.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. #12) is **GRANTED** as to the Second Cause of Action (quid pro quo harassment) and the Fourth Cause of Action (negligence), and **DENIED** as to the First Cause of Action (hostile work environment) and the Third Cause of Action (retaliation).

**IT IS FURTHER ORDERED** that the Clerk shall issue a Pretrial Notice Order.