Linda M. HAIRE, Plaintiff,

v.

UNITED STATES of America and Dan Glickman, United States Secretary of Agriculture, Defendants.

No. CIV.A. 3:98CV213–P–A.

United States District Court, N.D. Mississippi, Western Division.

June 6, 2000.

Ronald W. Lewis, Lewis & Associates, Oxford, MS, Lisa Scruggs Rohman, Lisa Scruggs Rohman, Tupelo, MS, for Plaintiff.

Carlton W. Reeves, U.S. Attorney's Office, Jackson, MS, for Defendants.

### MEMORANDUM OPINION

PEPPER, District Judge.

This cause is before the Court on the defendants' Motion for Summary Judgment. The Court, having reviewed the motion, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

### FACTUAL BACKGROUND

Linda Haire began working for the United States Department of Agriculture in 1982; she worked in various Farmers Home Administration offices in Calhoun County, beginning as a file clerk and working her way up to a position as loan technician in 1986. She remained in that position until 1992, when she applied for and accepted a position as Loan Specialist with the Regional Rural Development Administration, a division of the Department of Agriculture in Vicksburg. Haire sought the position in Vicksburg because of the potential for advancement. Indeed, when she accepted the position she was designated as a GS–9, but was subsequently promoted to a GS–11 and had every expectation of receiving a promotion to GS–12 when the federal government embarked on a reorganization effort which resulted in the closing of the Vicksburg office.

Despite being offered a transfer to a similar position in Booneville, Mississippi, with the same rate of pay and opportunity for advancement, Haire declined, citing family considerations as the reason. She instead sought to return to the Calhoun City area and inquired about appointment to a position in the agency's Calhoun City or Grenada offices. However, no such position was available. In order to accommodate Haire and in an effort to provide her with continued employment, George Irvin, the State Director for the USDA, created a GS–9 position as Assistant County Supervisor in Eupora, Webster County, Mississippi, a site far closer to Calhoun City. Haire accepted the position effective April 1, 1994 and signed a statement signifying that the demotion was voluntary.

In July 1994, Haire contacted an EEO counselor, complaining that her demotion and transfer to Webster County, Mississippi were the result of discrimination on the basis of gender and marital status. Despite informal efforts at conciliation, no resolution of Haire's complaint was achieved and in March 1995 she filed a formal EEO complaint.

In the meanwhile, the USDA underwent another, more drastic, reorganization-the "Transfer of Function." Haire's position as Assistant County Supervisor in Webster County was abolished as a result of the restructuring. In July 1995, she was offered a lateral transfer to the Calhoun County branch of the Farm Service Agency (FSA), with an October 1, 1995 effective date. Haire accepted the position, in part because she believed her duty station would be Calhoun City.[1] Haire subsequently learned that her duty station would not be Calhoun City, but rather, the Lafayette County satellite office located in Oxford, Mississippi. Nonetheless, Haire reported for duty as scheduled on October 1, 1995.

After exhausting efforts at informal conciliation, Haire filed a second EEO complaint on May 2, 1996. In addition to alleging discrimination on the basis of race, sex, and marital status, she also alleged that she suffered from retaliatory actions due to her filing of the first EEO

---

1. Haire experienced some chagrin at the proposed transfer because it would entail work with agricultural loans, whereas the vast majority of her prior experience with the Rural Development Agency involved housing loans.

charge. Among the alleged retaliatory acts were the transfer to FSA, the assignment to an Oxford duty station instead of Calhoun City, as well as the nature of the working conditions and the duties imposed upon her at her new station. She also alleged her failure to receive promotions to positions as Supervisory Community Development Manager in Calhoun City and as a Rural Development Specialist in Grenada, Mississippi were the result of retaliatory animus on the part of agency officials.

On November 20, 1998, Haire filed her Complaint in this Court, alleging retaliation in violation of 42 U.S.C. § 2000e-3. Defendants filed an answer denying liability. The defendants now seek summary judgment on all claims advanced by the plaintiff. The Court has reviewed the parties' submissions and supporting legal authority and is ready to rule.

### STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c), authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. Of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir.1985).

A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment

may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company, v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir.1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, ... all other contested issues of fact are rendered immaterial." *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir.1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir.1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir.1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757

F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 114 (5th Cir.1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.,* 672 F.2d 436, 440 (5th Cir.1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also Union Planters Nat. Leasing v. Woods,* 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court, (*Topalian,* 954 F.2d at 1137), Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment." *John,* 757 F.2d at 712, *quoting Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir.1980).

## LEGAL ANALYSIS

### A. Improper Defendant

Defendants assert, and plaintiff concedes, that the United States in an improper defendant in this action. *Honeycutt v. Long,* 861 F.2d 1346 (5th Cir.1988)(proper defendant in a Title VII action is the head of the agency in which the alleged discrim-

inatory acts occurred). Accordingly, the United States is entitled to dismissal with prejudice.

### B. Timeliness of Plaintiff's Complaints

■ The only claims pressed by Haire in the instant action are those arising out of her second EEO complaint filed May 2, 1996. The defendant Secretary conceded in his brief in support of the motion for summary judgment that Haire's second EEO complaint was procedurally proper-i.e., she initiated contact with an EEO counselor in a timely manner and followed proper channels in filing her formal complaint. However, he seeks to limit the retaliation inquiry to whether Haire's initial reassignment from Eupora to Oxford was retributive in nature. While the defendant asserts that the plaintiff's non-selection and compensation claims, discussed *supra,* are barred because she failed to exhaust her administrative remedies, the Court finds otherwise. Pursuant to the Fifth Circuit's holding in *Gupta v. East Texas State University,* "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the Court." 654 F.2d 411, 414 (5th Cir.1981). Inasmuch as the additional actions complained of by plaintiff postdate her contact with the agency's EEO counselor following her transfer to the FSA in Oxford, Mississippi, the Court finds that the additional retaliatory acts are within the Court's ancillary jurisdiction. *See also Jones v. United States Postal Service,* 2000 WL 341254 (N.D.Miss. Mar. 17, 2000).

### C. Retaliation

Analysis of a retaliation claim proceeds under the same *McDonnell Douglas–Burdine* shifting burden process as other claims arising under Title VII. A plaintiff seeking recovery for an employer's alleged

retaliatory acts must first establish a prima facie case of retaliation. Haire must thus adduce evidence of the following elements in order to meet her prima facie burden:

1. Involvement in activities statutorily protected by Title VII;

2. Adverse employment action; and

3. A causal connection between the protected act and the adverse employment action.

*Larry v. North Mississippi Medical Center,* 940 F.Supp. 960, 964 (N.D.Miss.1996), *aff'd in part,* 156 F.3d 181 (5th Cir.1998). Once a plaintiff establishes a prima facie case, a presumption of unlawful retaliation arises. At that point, the burden then shifts to the defendant to articulate a legitimate reason for the action taken. *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.19987). Should the defendant produce evidence of a legitimate, non-retaliatory reason for the adverse employment action, then the inference created by the prima facie case dissolves and the burden returns to the plaintiff to establish that the reason proffered by the defendant in support of its action is nothing more than a pretext to hide its true retaliatory motivation. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

As indicated in the Court's earlier recitation of facts, plaintiff alleges she was the victim of retaliation as a result of her 1994–95 filing of an EEO charge stemming from her demotion/transfer to Eupora, Webster County, Mississippi. The alleged retaliatory actions by agency officials include the following: 1. Transfer to FSA rather than remaining with Rural Economic and Community Development (RECD);

1. Transfer to FSA rather than remaining with Rural Economic and Community Development (RECD);

2. Assignment to an Oxford, Lafayette County duty station rather than to a duty station in Calhoun City, Calhoun County;

3. The duties and lack of resources she encountered at the Oxford office;

4. Failure to be chosen for the Supervisory Community Development Manager position in Calhoun City, Mississippi;

5. Failure to be chosen for the Rural Development Specialist position in Grenada, Mississippi

In addition, plaintiff also asserts she was retaliated against by her district supervisor, James Redding, in that she was not upgraded from a GS–9 position to a GS–11, despite the fact that other Credit Specialists without loan approval authority had been so promoted. The Court will deal with each of plaintiff's claims in turn.

1. **Transfer to FSA and Duty Station in Oxford, Mississippi**

Defendant seeks summary judgment on this aspect of plaintiff's claim on two grounds-the plaintiff's inability to establish a prima facie case and her ultimate failure to adduce any probative evidence which discredits defendant's legitimate nondiscriminatory reason for the transfer. Notwithstanding plaintiff's arguments to the contrary, the Court is in agreement with the defendant's analysis.

█ First, the plaintiff's transfer to the FSA and her assignment to a duty station in Oxford, Mississippi do not amount to adverse employment decisions. "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin,* 77 F.3d 777 (5th Cir.1995). "Ultimate employment decisions" include such acts as "hiring, granting leave, discharging, promoting and compensating." *Id.* The instant case involves a mere lateral transfer-not the sort of ultimate employment decision to which Title VII applies. *Burger v. Central Apartment Management, Inc.,* 168

F.3d 875 (5th Cir.1999) (citing *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996)).

> Obviously a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either. Otherwise, every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.

*Id. See also Haimovitz v. United States Department of Justice,* 720 F.Supp. 516 (W.D.Pa.1989)(INS attorney's proposed transfer from General Attorney—Naturalization in Pittsburgh, Pennsylvania office of the INS to position as Trial Attorney in Harlingen, Texas not an adverse employment action).

Second, even were the Court to construe plaintiff's transfer to FSA as an adverse employment decision, plaintiff is incapable of establishing even a tenuous causal nexus between her protected activity and the transfer. The only cognizable connection between plaintiff's first EEO complaint in March 1995 and her notice of reassignment in July 1995 is George Irvin. Despite plaintiff's efforts to make much of Irvin's ultimate "say-so" in reassignment decisions during the 1995 transfer of function, it is evident that the transfer of employees was accomplished by a committee, and that his role was limited, in effect, to rubber-stamping the committee's recommendations.

■ Finally, assuming plaintiff's evidence is sufficient to meet the elements of a prima facie case,. she has failed to produce any evidence from which a reasonable trier of fact might conclude that the agency's stated reason for her transfer to FSA with a duty station in Oxford was false, let alone a pretext for retributive action. The transfer of function was the result of an agency-wide reorganization across the country; more than one hundred Mississippi employees were reassigned from positions in RECD to positions in FSA over the course of the restructuring. The process of reassignment was accomplished in an orderly fashion, by way of disinterested committee members, of whom one was an EEO officer. The Calhoun County Office of FSA, headquartered in Calhoun City, was to have two credit specialists-one duty stationed in Calhoun City and one in Oxford. The Calhoun City position went to Doug Naron because he was a "direct match;" that is, he already held a credit specialist position in Calhoun City. Haire was appointed to the remaining credit specialist position in Oxford during the second round of selection. Plaintiff has pointed to no evidence from which a trier of fact could find that the defendant's explanation is either unworthy of credence or from which a reasonable inference of retaliatory motive might be drawn. Defendant is entitled to summary judgment on these aspects of plaintiff's claim.

2. Working Conditions Encountered at the Oxford Office

■ This claim, too, must fail for the reasons given above. Plaintiff's complaints concerning the lack of resources available to her at the Oxford office (the lack of clerical help and the lack of computer tie-ins, desk, etc.) do not amount to an adverse employment action under Fifth Circuit precedent. *Mattern v. Eastman Kodak,* 104 F.3d 702, 707–708 (5th Cir.), *cert. denied,* 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997). Nor do her complaints that she was denied training. *Dollis v. Rubin,* 77 F.3d 777 (5th Cir.1995) Accordingly, these claims must fail as well.

3. Non-selection for the Supervisory Community Development Manager Position

Shortly after Haire received her notice of reassignment to FSA's Calhoun County office-but before the effective date of her transfer, she learned of an opening for a

position as a Supervisory Community Development Manager with the RECD in Calhoun City, Mississippi. The position was a GS–9/11 level position, and called for the skills Haire developed and utilized in her prior work with the Farmers Home Administration and the Rural Development Agency (now RECD). Haire submitted her application. She was considered for the position, along with ten other candidates who applied for the job. A Promotion Evaluation committee was appointed to consider the relative merits of the applicants based on a list of five objective criteria deemed necessary to adequately perform in the position. Members of the committee evaluated the applicants and assigned a point value ranging from 1 to 5 for each of the identified criteria. Based on the committee's evaluation, Randy Baker received the top score (20); therefore, the position went to him.[2]

■ Plaintiff's non-selection for the Supervisory Development Manager position is sufficient to meet the requirement of an adverse employment action. For purposes of deciding the instant motion, the Court assumes that the evidence supports a finding of the requisite causal connection necessary to plaintiff's prima facie case of retaliation. Defendant's explanation of its selection process and the criteria it utilized suffice to meet its burden of establishing a non-retaliatory basis for the decision not to promote Haire to the vacant position as supervisory development manager. In the face of that showing, it becomes plaintiff's burden to demonstrate the falsity of that reason. Under the circumstances, her burden is to put forward credible evidence which tends to prove that she is "clearly better qualified" than the committee's selectee, Randy Baker. *Scott v. University of Mississippi*, 148 F.3d 493, 508 (5th Cir. 1998). The Court has reviewed the record evidence and is of the opinion that she has failed to meet this burden. "Unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap

us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." *EEOC v. Louisiana Office of Community Servs.*, 47 F.3d 1438, 1445 (5th Cir.1995). Defendant's motion for summary judgment is well-taken in this regard.

4. Non-selection for the Loan Specialist Position

In February 1996, Haire applied for another opening in RECD's Grenada, Mississippi district office as a Rural Development Specialist. She submitted her application in a timely manner; however, the agency declined to consider her application and another candidate, Paul Juchheim, was selected for the position in accordance with a procedure similar to that outlined in subsection C.3. above. Plaintiff Haire asserts that her non-selection for the position in early 1996 was likewise the result of unlawful retaliation by the USDA. Given that plaintiff's non-selection occurred within a relatively short period following her second contact with an EEO counselor regarding her concerns that her transfer to FSA's Oxford office was rooted in retaliation, the Court finds that this temporal proximity is sufficient to establish a nexus between her protected activity under Title VII and her failure to be promoted to the Rural Development Specialist position.

Defendant met its burden under the second step of the *McDonnell Douglas–Burdine* test. As explained by Billy H. Lott, Jr. in his affidavit (and as communicated to Haire by way of letter dated March 7, 1996), Ms. Haire's application was not provided to the promotion evaluation panel for consideration because consideration for the promotion was limited to current employees of RECD. As a result of the transfer of function, Ms. Haire was transferred to

---

2. By contrast, Ms. Haire scored only a 17.

FSA and ceased to be a RECD employee as of October 1, 1995.

 Plaintiff attacks the agency's non-retaliatory reason on grounds of pretext, and urges that the Memorandum of Understanding referred to by Lott is not so restrictive as defendant would suggest. She points to the caveat in the Memorandum which states: "During the reorganization, the area of consideration shall be restricted to current employees until all current permanent employees are placed *unless:* 1) A sufficient number of current employees do not exist ..., or *to further promote workplace diversity."* In view of George Irvin's testimony that it was initially contemplated that agency employees would be permitted to move between FSA and RECD following the reorganization, and David Warrington's further admission that the agency lacks substantial workplace diversity, the Court is constrained to find that the plaintiff has, if only just barely, met her burden of establishing pretext and is entitled to present this claim to a jury. Defendant's motion for summary judgment as to this aspect of plaintiff's retaliation claim is not well-taken and should be denied.

### 5. Compensation Claim

 Upon review of the plaintiff's claim that she was denied an upgrade to GS–11 despite the fact that other credit specialists without loan approval authority had been promoted to that level, the Court finds that, while it is a close call, the plaintiff has adduced sufficient evidence to withstand the defendant's motion for summary judgment. In any event, the Court has the discretion, which it exercises here, to allow this claim to proceed to trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)("Neither do we suggest ... that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").

## CONCLUSION

Based upon the above and foregoing analysis, the United States is entitled to dismissal with prejudice inasmuch as it is not a proper defendant in the instant action. The remaining defendant, United States Secretary of Agriculture, is entitled to summary judgment on all but the plaintiff's claims of retaliation concerning her non-selection for the Rural Development Specialist position and the failure to grant her an upgrade to GS–11 in her position as Credit Specialist with the FSA. An order will issue accordingly.